# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 38113

| | |
|---|---|
| IN THE MATTER OF THE JEROME COUNTY BOARD OF COMMISSIONERS; DECISION DATED SEPTEMBER 23, 2008, APPROVING A LIVESTOCK CONFINEMENT OPERATION PERMIT FOR DON McFARLAND, DBA BIG SKY FARMS. | ) ) ) ) ) ) ) ) ) |
| | ) |
| FRIENDS OF MINIDOKA, DEAN & EDEN DIMOND, HAROLD & CAROLYN DIMOND, WAYNE SLOAN, guardian of JAMES SLOAN, THE IDAHO RURAL COUNCIL, INC., IDAHO CONCERNED AREA RESIDENTS FOR THE ENVIRONMENT, INC., | ) ) ) ) ) ) ) ) |
| Petitioners/Appellants/Cross-Respondents, | ) ) ) |
| v. | ) ) |
| JEROME COUNTY, JOSEPH DAVIDSON, CHARLES HOWELL, DIANA OBENAUER, members of the JEROME COUNTY BOARD OF COMMISSIONERS, | ) ) ) ) ) |
| Respondents/Respondents on Appeal/ Cross-Appellants, | ) ) ) |
| and | ) ) |
| SOUTH VIEW DAIRY, an Idaho general partnership, WILLIAM VISSER, WILLIAM DE JONG, and RYAN VISSER, general partners, | ) ) ) ) ) |
| Intervenors/Respondents on Appeal. | ) ) |

Boise, February 2012 Term

2012 Opinion No. 111

Filed: July 6, 2012

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. Robert J. Elgee, District Judge.

District court decision, <u>affirmed.</u>

Hutchinson & Brown, LLC, Twin Falls, for appellant. Charles M. Tebbutt argued.

Jerome County Prosecutor's Office, Jerome, for respondent Jerome County. Michael J. Seib argued.

Williams, Meservy & Lothspeich, LLP, Jerome, for respondent Southview Dairy. John B. Lothspeich argued.

_____

BURDICK, Chief Justice

This case concerns the approval of a permit application for a Livestock Confinement Operation (LCO), also known as a Concentrated Animal Feeding Operation (CAFO), by the Jerome County Board of County Commissioners (Board). The Board approved the application after a remand by the district court of the Board's decision previously denying the permit. Several individuals and organizations were opposed to the LCO because of the potential harms to the neighboring farms and to the Minidoka National Historic Site petitioned the district court for review of the Board's decision on remand from the district court. The district court affirmed the Board's approval of the permit, finding in the process that four of the organizations concerned with the effects on the Minidoka National Historic Site lacked standing. Several of the objecting parties have appealed the district court's decision, asking that this Court find that these parties had standing to challenge the permit approval, that the Board's procedure for presenting evidence before the Board violated procedural due process rights, and that the Board failed to follow all of the county's relevant zoning ordinances when it approved the application. In resolving the appeal, we address issues concerning the standing of appellant-organizations, the due process rights of individuals wishing to present evidence throughout the LCO permit application process, the constitutionality of the "one mile rule" of Idaho Code section 67-6529, and the application of the Jerome County Zoning Ordinances. We conclude that the Board properly applied its zoning ordinance to the LCO permit application process, that I.C. § 67-6529 is not unconstitutional, and that the public was afforded appropriate due process prior to, and

2

during the LCO permit application hearing.  We affirm the district court's decision on judicial review.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A. **Original Proceedings**

#### 1) Application and Hearing

On May 3, 2007, Big Sky Farms (Big Sky) filed an application with Jerome County for a LCO permit.  The application indicated an 8,000 Animal Unit[1] facility on 1,204.61 acres zoned as A-1 agriculture on the north side of US Highway 25 near Eden, Idaho.  The proposed site is approximately 1.25 miles from the Minidoka National Historic Site and is surrounded by resident farms.  After the application was forwarded to the Idaho Department Agriculture Siting Team for a suitability determination, the Board set public hearings for the application on September 25 and 26, 2007, and also discussed the matter at a public meeting on October 9, 2007.

Originally, the Board scheduled a public hearing to be held on August 14-15, 2007.  Pursuant to the county zoning ordinance, the Board sent written notice to individuals owning property within one mile of the proposed site on July 17, 2007, and published the hearing dates in the *Jerome North Side News* two days later.  In these initial notices, the Board indicated that it would only consider written comments submitted within fifteen days of the publication date by property owners having a primary residence within a one mile radius of the proposed site.  Any public testimony during the hearing would be limited to one 8.5″x11″ single-sided sheet of paper and two minutes of oral testimony.

The Board rescheduled the public hearing to September 25-26, 2007, to make amends for submissions that were denied by the county zoning department when it improperly interpreted the end date for public submissions.  New notices were sent by mail on August 15, 2007, and published in the newspaper on August 23, 2007; these notices included the same submission procedures.  On September 10, 2007, the Board amended the submission procedures for the public hearing and denied another delay that was requested by attorneys for entities in opposition to the LCO that were unable to attend on the dates of the hearing.  The new procedures were adopted upon the county attorney's recommendations that the two minutes allotted for oral testimony may be unconstitutional; the Board voted to allow four minutes for oral testimony and

---

[1] Each Animal Unit is characterized as 1,000 pounds of animals.  The application states that the 8,000 Animal Units consists of 1,070 head of bottle fed calves at 105 lbs. each, 1,615 started heifers at 185 lbs. each, 6,071 open heifers at 520 lbs. each, and 4,432 bred heifers at 1,000 lbs. each.

two pages of written testimony instead of one from a person willing to forego his or her opportunity to testify orally. These new procedures were mailed out to property owners within the one-mile radius on September 11, 2007, and published in the newspaper on September 13, 2007. Also at this time, the Board amended other procedures for hearings, yet did not include them as part of the notices to the parties or for the Big Sky LCO hearing publication notice. These amended procedures provided for the submission by the public of any written testimony or documentary evidence prior to the hearing, as long as it was received no later than seven days before the hearing.[2]

On the day that the notice was published in the newspaper, the Board received a letter from the attorney of the guardian for James Slone indicating that he owned property approximately 300 yards southeast of the LCO site and he had not received a notice in the mail. The letter indicated that Mr. Slone had the right to be represented by counsel at the hearing and asked the Board to delay the hearing because the attorney could not attend on the published dates. A notice was sent to Mr. Slone on September 14, 2007, but he did not receive it before the time for written submissions expired. The zoning department later explained to the Board that no notice had been previously mailed because there was no residence on Mr. Slone's property and it had interpreted the zoning ordinance to only require notices be sent to properties within the one-mile radius with residences. The Board considered delaying the hearings because of the lack of mailed notice, but on advice of the county attorney that there was no deficiency in notifying Mr. Slone, the Board decided to go forward with the previously scheduled hearing.

2) <u>Hearing Participants</u>

Among those that appeared before the Board at the hearing or submitted written evidence were Big Sky, Dean and Eden Dimond, Harold and Carolyn Dimond, Wayne Slone as guardian of James Slone, the Idaho Rural Council, Inc., Idaho Concerned Area Residents for the Environment, Inc., the Japanese American Citizens League, Inc., the National Trust for Historic Preservation, Inc., and Preservation Idaho, Inc.

---

[2] Prior to this amendment, zoning ordinance 13-6.02 "Public Comment" of the chapter (13) for LCOs stated that submission of written comments or objections could be done by any "primary resident, in accordance with Idaho Code 67-6529." The amendment to Chapter 13's public hearing provision, 13-7.01 stated:

> One Public Hearing shall be heard before the Board on applications brought pursuant to this chapter. At such hearing, *all members of the public* desiring to present oral or written comment, or documentary evidence, shall be allowed to do so, subject to the hearing procedures (including limits of time) as set fourth [sic] in Chapter 23 of this Ordinance.

(Emphasis added.) The relevant part of Chapter 23 for hearing procedures, 23-6.02 F. indicated that all written testimony and other documentary evidence was to be submitted no later than seven days prior to the hearing.

a. Big Sky

The attorney for Big Sky was the first to appear at the hearing and asked the Board to focus solely on whether the application met the requirements of Chapter 13 in the zoning ordinance and recited the requirements listed therein, describing how Big Sky had met each.

b. Friends of Minidoka

Friends of Minidoka is a non-profit organization based in Twin Falls dedicated to educational, preservation, and research pursuits and projects related to the Minidoka National Historic Site. Friends of Minidoka has approximately 108 members, nineteen of which reside in Idaho, with one residing in Jerome County. According to their chairperson, these members travel to the Minidoka National Historic Site on a yearly basis and co-sponsor a Civil Liberties Symposium each year at the College of Southern Idaho. Friends of Minidoka have joined other entities to challenge the LCO, and have written articles in their newsletters and spoken to reporters in Jerome County to spread knowledge about the LCO. They have also partnered with the National Park Service to hire a Washington State University scientist to study the effects of the LCO on the air quality in Minidoka. Friends of Minidoka believe that the LCO will impair their efforts to safely utilize the historic site and prohibit members from participating in its events. The Board received correspondence from Friends of Minidoka during the submission period.

c. Dean and Eden Dimond

Dean and Eden Dimond are landowners that reside in close proximity to the proposed LCO. The Dimonds are fourth generation farmers who reside directly west of the proposed LCO and farm for a dairy operation. The Dimonds hand-delivered comments to the Board that were initially returned but later admitted during a subsequently scheduled period for submissions; the packet of documents contained a memorandum from the Dimonds as well as correspondence with various agencies. In a letter to the Board, the Dimonds expressed their concerns with the LCO, stating initially their reservations with the limited amount of time they had been given to respond following the notice (15 days). Also, according to the Dimonds, the LCO application failed to meet minimum requirements of the zoning ordinance and included too much vague and hypothetical information for a meaningful review. The Dimonds also adopted the reservations of the National Park Service, Japanese American Citizens League, and Conservation Fund in their opposition to the LCO. The other reasons the Dimonds gave the Board for denying the

application include the increased traffic in the area; the application's undercounting of animals, which leads to a number exceeding the county ordinance's allowance for cows per acre; pictures that show that the operation can be seen from Highway 25, contrary to application comments stating otherwise; allegations that the waste water pivot overlaps onto a neighbor's land; concerns about the natural drainage; water transfers that had yet to be approved; concerns about setbacks; operation lighting that will disturb the Dimond property; compromised resale value of existing homes in the area; odors; health concerns; pollution; waste of prime farm land; lack of study on the viability of surrounding property; lack of respect for the Minidoka National Historic Site; and the fact that the operation will transform the land that should be used for smaller agricultural operations into an industrial operation.

### d. Harold and Carolyn Dimond

At the hearing, Carolyn Dimond testified that her due process rights had been violated because she had not received individual notice, because the Board had not accepted her written testimony, and because her attorney could not be present at the hearing. Harold Dimond testified that the Board had denied him the opportunity to have an attorney present, and that the zoning department had denied him an opportunity to submit evidence prior to the hearing. He also "expressed concern about the evidentiary limitations of the hearing." The Board asked Mr. Dimond follow-up questions regarding his concerns, asking if the Board had ever told him that he could not bring an attorney to the hearing. The county attorney also stated that "there was not necessarily a right to have an attorney" at the hearing and that Mr. Dimond was not restricted to being represented by that specific attorney.

### e. James Slone

At the October 9, 2007 meeting where the Board reached its final decision, Mr. Slone's attorney requested that the Board vacate the hearing and schedule a new one because Mr. Slone's rights had been violated because of the lack of notice and lack of opportunity to testify.

### f. Idaho Rural Council, Inc.

Idaho Rural Council is a non-profit, non-partisan grassroots organization committed to preserving Idaho's family farms and is interested in the negative impacts to air and water quality of its members living and farming in the area around the proposed LCO. According to its executive director, Idaho Rural Council has 425 members with more than 13 living in Jerome County, including Dean and Eden Dimond and Harold and Carolyn Dimond.

### g. Idaho Concerned Area Residents for the Environment, Inc.

Idaho Concerned Area Residents for the Environment (ICARE) is a non-profit corporation advocating on behalf of Idaho citizens against the severe impact of LCOs. ICARE was denied the opportunity to provide substantial written testimony to the Board, but was allowed to provide oral testimony. According to the executive director, ICARE has 111 members, many of which live close to the proposed LCO and the Minidoka National Historic Site. ICARE submitted the report entitled "Pew Commission Report on Industrial Factory Animal Production" to the Board. Many of its members submitted written submissions (of one page) at the hearing.

### h. The Japanese American Citizens League, Inc.

Japanese American Citizens League is the oldest and largest Asian-American civil rights organization in the United States. The Pacific Northwest Regional Director provided oral testimony to the Board and submitted a photograph of immediate family members who were incarcerated in Tule Lake. As of September 2009, there were six members within the counties of Jerome, Twin Falls, and Minidoka.

### i. The National Trust for Historic Preservation, Inc.

The National Trust for Historic Preservation in the United States is a non-profit corporation chartered by Congress in 1949 to protect historic resources; the National Trust provided a statement of interest at the Board hearing. At least one member of the National Trust provided the Board with oral comments on behalf of the National Trust. The National Trust also submitted written submissions.

### j. Preservation Idaho, Inc.

Preservation Idaho advocates for historic and cultural resources, and provided written and oral testimony to the Board. Preservation Idaho has 239 members, including two members residing in Jerome County. The President of the Board of Trustees submitted written evidence and testified orally before the Board.

### 3) Board Decision

The Board issued a written decision denying the application on November 1, 2007. The Board found that the application complied with the standards of the zoning ordinance, but was contrary to the county's comprehensive plan. Specifically, the Board's decision stated that the application's Nutrient Management Plan did not sufficiently provide assurances that the 267,000

pounds of annual phosphate waste would be disposed of appropriately. Big Sky filed a Petition for Judicial Review on November 13, 2007, listing the issues as whether the denial of the permit application violated Idaho Code sections 67-6519, 67-5535, and 67-5279.

### 4) District Court Decision

The district court found that Chapter 13 of Jerome County's zoning ordinance outlined the considerations for the acceptance or denial of an LCO application. According to the ordinance, the Board was limited to a consideration of whether the application was complete, whether the LCO facility was located in an Agriculture A-1 zone, and whether the application complied with the provisions of Chapter 13 and the remaining zoning ordinance.[3] Based on these findings, the district court held that the Board had erred by relying on the county's comprehensive plan to deny the LCO application. The district court reasoned that since Chapter 13 of the zoning ordinance did not reference the county's comprehensive plan as criteria for consideration, it was inconsistent with the principles of fundamental fairness that the Board had relied on it to deny the application. The district court remanded the case for further proceedings, indicating that the court's decision did not require the Board to just approve the application, but stated the Board could deny the application if another valid basis could be found to declare the application incomplete. Finally, the district court found that although the decision had improper criteria in its rationale, the Board's decision met the statutory requirement that it provide a reasoned statement to explain the conclusion.

### B. Subsequent Proceedings

### 1) Board Reconsideration on Remand

On remand, the Board reconsidered the application during five of its meetings. During one Board meeting, Dean Dimond attempted to file additional evidence and asked to be heard, but the Board declined his request. On September 23, 2008, the Board released its written order, voting 2-1 to approve the application, subject to conditions. The Board found that Big Sky had addressed each of the criteria listed by the district court in its decision, and had supported "each with credible evidence, which was not disputed by any other evidence presented to the Board." The Board also recognized that on remand it could reconsider all issues. After discussing the Chapter 13 requirements, focusing closely on the disputed sections from the Board's initial

---

[3] Other standards and criteria required include "setbacks, use of shielded lighting, maximum density of animal units, etc."

ruling and the dissenting Board member's views, the Board concluded that the application had complied with all outlined standards and criteria.

Regarding the originally contested issues, the Board reasoned that since neither evidence in the record previously overlooked was brought to light, nor a "well-reasoned argument" was put forth that was not previously considered, the Board could not establish that their original decision was in error. The Board also examined the required waste distribution plan from Chapter 13 of the zoning ordinance that is similar to the reason the Board used the Comprehensive Plan to initially deny the application. Upon examination, the Board found that this requirement did not need to be met prior to an issuance of a permit; only when a party makes arrangements to transfer waste from the property must an agreement be in place, and the evidence that had been provided for the agency record was sufficient to satisfy the ordinance standard. The Board also examined the ordinance's requirements that appropriate State agencies approve the Nutrient Management Plan and Waste System Design. Again, the Board noted that the evidence provided by Big Sky supported compliance and that no evidence was presented to contradict this compliance. As Big Sky had met all the applicable standards and criteria, the Board approved the application with conditions. These conditions included construction of a school bus pull-off area near the facility and a dike or concrete wall sufficient to keep waste from contaminating the natural drainage to a nearby canal.

2) Petition for Review

On October 21, 2008, petitioners Friends of Minidoka, Dean and Eden Dimond, Harold and Carolyn Dimond, James Slone, the Idaho Rural Council, Inc., Idaho Concerned Area Residents for the Environment, Inc., the Japanese American Citizens League, Inc., the National Trust for Historic Preservation, Inc., and Preservation Idaho, Inc., sought judicial review and declaratory judgment pursuant to I.C §§ 67-6521, 67-5271, 10-1201, and the Jerome County Zoning Ordinances regarding the Board's Memorandum Decision. The petitioners filed an amended petition on March 6, 2009, removing all references to the previous request for a declaratory action. Subsequent to the motion for judicial review, the district court allowed South View Dairy (successor in interest to Big Sky) to intervene and allowed the agency record to be filed.

3) District Court's Decision

9

On August 5, 2010, the district court filed its decision. The district court addressed seven issues in its decision including standing, the constitutionality of I.C. § 67-6529, procedural due process at the public hearing, the application's completeness, the Board's adherence to procedure, the requirement for a reasoned statement from the Board, and attorney fees. The district court examined those petitioners singled out by intervenor South View Dairy, finding that four of the entities lacked standing. The district court looked first to see if the parties were adversely affected by the permit application's acceptance or denial, which depended on the ownership of property affected by the development. The district court also indicated that the requirements for standing to determine who had a right to challenge a land use decision were different than for a right to present evidence at a public hearing. The district court ruled that ICARE and Idaho Rural Council had standing as they both had members who would be adversely affected, facing potential harm, if the LCO site were to be developed. Next the district court found that Friends of Minidoka, the Japanese American Citizens League, the National Trust for Historic Preservation, and Preservation Idaho each lacked standing. None of these entities had presented an identifiable member who would suffer specific harm from the development of the LCO. Also, it found that although each of these entities expressed the importance of the Minidoka National Historic Site, none had spoken on behalf of the historic site or made a showing that they represented the site or were on the board of directors for the site.

On the question of the constitutionality of I.C. § 67-6529, the district court concluded that the petitioners had not cited to any persuasive authority to support their argument, so it refused to rule on the issue, though it did mention that, as applied to the parties, the Board had relaxed the standards. Next, the district court addressed the issue of the procedures for presenting evidence before the Board. The court concluded that no due process rights of the petitioners had been violated, reasoning that the Board had allowed unlimited written materials prior to the hearing and allowed any member of the public a limited right to comment and present written materials. As for the next three issues, the alleged failure of the Board to follow its own ordinances, the alleged incompleteness of the application, and the alleged failure to provide a reasoned statement, the district court concluded that the petitioners had failed to demonstrate how the Board was in error. Finally, the district court denied all requests for attorney fees, and ruled that the petition for judicial review was denied and affirmed the Board's decision.

On August 26, 2010, the district court entered an order dismissing those parties it had determined were without standing in its decision. A timely notice of appeal and notice of cross-appeal were filed with this Court.

## II. STANDARD OF REVIEW

The Local Land Use Planning Act (LLUPA) allows judicial review of an approval or denial of a land use application for an affected person, as provided for in the Idaho Administrative Procedural Act (IDAPA). Idaho Code § 67–6521(1)(d); *Cowan v. Bd. of Comm'rs of Fremont Cnty.*, 143 Idaho 501, 508, 148 P.3d 1247, 1254 (2006). This Court has stated that for the purposes of judicial review of LLUPA decisions, where a board of county commissioners makes a land use decision, it will be treated as a government agency under IDAPA. *Id.*; *Evans v. Teton Cnty.*, 139 Idaho 71, 74, 73 P.3d 84, 87 (2003). Appeals of these decisions can be heard by a district court on judicial review and this Court reviews decisions of any intermediate court sitting in an appellate capacity independently under IDAPA, reviewing the agency record of the board's independently of any previous decision on judicial review. *Neighbors for a Healthy Gold Fork v. Valley Cnty.*, 145 Idaho 121, 126, 176 P.3d 126, 131 (2007); *Evans*, 139 Idaho at 74, 73 P.3d at 87. This Court will not substitute its judgment for that of the board's as to the weight of the evidence on questions of fact. *Neighbors*, 145 Idaho at 126, 176 P.3d at 131; *Cowan*, 143 Idaho at 508, 148 P.3d at 1254; *Chisholm v. Twin Falls Cnty.*, 139 Idaho 131, 133, 75 P.3d 185, 187 (2003). This Court will defer to the board's findings of fact unless the findings are clearly erroneous; these factual determinations of the board are binding on a reviewing court when supported by substantial and competent evidence in the record, even if there was conflicting evidence before the board. *Neighbors*, 145 Idaho at 126, 176 P.3d at 131; *Chisholm,* 139 Idaho at 133, 75 P.3d at 187; *Evans*, 139 Idaho at 75, 73 P.3d at 88.

> This Court shall:
>
> affirm the zoning agency's action unless the Court finds that the agency's findings, inferences, conclusions or decisions are: (a) in excess of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion.

*Neighbors*, 145 Idaho at 126, 176 P.3d at 131 (citing I.C. § 67-5279(3); *Cowan*, 143 Idaho at 508, 148 P.3d at 1254). A party that challenges a board's decision must demonstrate first that the board erred in a manner specified in I.C. § 67-5279(3), next the party must show that one of

11

its substantial rights has been prejudiced. *Neighbors*, 145 Idaho at 126, 176 P.3d at 131; *Chisholm,* 139 Idaho at 133, 75 P.3d at 187. "[P]lanning and zoning decisions are entitled to a strong presumption of validity; this includes the board's application and interpretation of their own zoning ordinances." *Cowan*, 143 Idaho at 508, 148 P.3d at 1254. This Court will defer to a board's "interpretation and application of its zoning ordinance, unless such interpretation or application is capricious, arbitrary or discriminatory." *Chisholm,* 139 Idaho at 134, 75 P.3d at 188.

This Court exercises free review over questions regarding whether the board has violated a statutory provision, which is a matter of law. *Evans*, 139 Idaho at 75, 73 P.3d at 88. Jurisdictional issues, like standing, are questions of law, over which this Court exercises free review. *Christian v. Mason*, 148 Idaho 149, 151, 219 P.3d 473, 475 (2009). Also, the constitutionality of a statute or administrative regulation is a question of law over which this Court exercises free review. *Lochsa Falls, L.L.C. v. State*, 147 Idaho 232, 237, 207 P.3d 963, 968 (2009).

### III.   ANALYSIS

#### A. Except for Friends of Minidoka, each appellant has standing to appeal the Board's decision.

Friends of Minidoka, the Idaho Rural Council, Inc., and ICARE (collectively, appellant-organizations) argue that they have standing because their members demonstrated a concrete and particularized injury to a judicially-cognizable interest when they alleged that they had significant interest in maintaining the recreational and aesthetic values of the Minidoka National Historic Site and in protecting their own property interests. The district court found that Friends of Minidoka and three other associations not parties to this appeal lacked standing. The Board argues on appeal that the remaining associations, Idaho Rural Council, Inc. and ICARE, also lack standing. None of the individual parties' standing has been challenged on appeal. We find that Idaho Rural Council, Inc., and ICARE have standing, and that Friends of Minidoka lacks standing.

One "fundamental tenet of American jurisprudence" is "that a person wishing to invoke a court's jurisdiction must have standing." *Van Valkenburgh v. Citizens for Term Limits*, 135 Idaho 121, 124, 15 P.3d 1129, 1132 (2000). The three most basic propositions of the doctrine of standing that our Court uses to guide its decisions were outlined in *Boundary Backpackers v. Boundary County* as being (1) that standing "focuses on the party seeking relief and not on the

issues the party wishes to have adjudicated;" (2) that in order "to satisfy the case or controversy requirement of standing, litigants generally must allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury;" and (3) that "a citizen and taxpayer may not challenge a governmental enactment where the injury is one suffered alike by all citizens and taxpayers of the jurisdiction." 128 Idaho 371, 375, 913 P.2d 1141, 1145 (1996) (quoting *Miles v. Idaho Power Co.,* 116 Idaho 635, 641, 778 P.2d 757, 763 (1989)). Building upon these basic propositions, this Court also considers that standing "may be predicated upon a threatened harm as well as a past injury." *Schneider v. Howe*, 142 Idaho 767, 772, 133 P.3d 1232, 1237 (2006). As applied to associations seeking standing for its members, this Court considers whether the association has alleged that at least one of its members face injury and could meet the requirements of standing on an individual basis. *Selkirk-Priest Basin Ass'n, Inc. v. State ex rel. Andrus*, 127 Idaho 239, 241-42, 899 P.2d 949, 951-52 (1995).

The Jerome County Zoning Ordinance 13-6.04 indicates the procedure for the appeal of a LCO decision for a party seeking relief. "An affected person aggrieved by the decision of the Board of County Commissioners, may, seek judicial review under the procedure provided by Idaho Code . . . ." This ordinance reads like, and is apparently based upon, LLUPA's "affected person" statute, I.C. § 67-6521. Idaho Code section 67-6521(1)(d) allows an "affected person aggrieved by a decision" to seek judicial review. This quote is from I.C. § 67-6521(1)(d) as it appeared at the time of the Board's decision. The applicable part of Idaho Code section 67-6521(1)(d) now reads, "An affected person aggrieved by a final decision concerning matters identified in section 67-6521(1)(a) . . . ." S.L. 2010, ch. 175, § 3, 361. An affected person is one who has "an interest in real property which may be adversely affected by the issuance or denial of a permit authorizing the development." I.C. § 67-6521(1)(a). As of March 31, 2010, the statute now reads in pertinent part: "an affected person shall mean one having a bona fide interest in real property which may be adversely affected by: (i) [t]he approval, denial or failure to act upon an application for a subdivision, variance, special use permit and such other similar applications required or authorized pursuant to this chapter." S.L. 2010, ch. 175, § 3, 361.

With respect to CAFOs, standing is further limited by the provision in Idaho Code section 67-6529(2) which states, "Only members of the public with their primary residence within a one (1) mile radius of a proposed site may provide comment at the hearing. However,

13

this distance may be increased by the board." A party may raise on judicial review only those issues that the party raised before the administrative tribunal. *In re Idaho Dep't of Water Res. Amd. Final Order Creating Water Dist. No. 170*, 148 Idaho 200, 206, 220 P.3d 318, 324 (2009). This rule does not apply to an issue that the tribunal lacks the authority to decide. *Clear Springs Foods, Inc. v. Spackman*, 150 Idaho 790, 797, 252 P.3d 71, 78 (2011). Thus, if a party cannot provide comment at the hearing, the party cannot raise issues at the hearing and, therefore, does not have standing to raise those issues by judicial review.

Although section 67-6529(2) limits standing to "members of the public with their primary residence within a one (1) mile radius of a proposed site," it permits the board to increase that distance. There is no requirement that the board increase that distance by adopting an ordinance. It can increase the distance simply by permitting members of the public whose primary residence is beyond the one-mile limitation to comment at the hearing. At the Big Sky hearing, the Board allowed all members of the public the opportunity to present comments at the hearing, or as the district court put it: "[the Board] heard oral testimony from anyone who wanted to give it, regardless of where they lived." If we were to follow I.C. § 67-6529(2) in this case, we would have to consider allowing standing to all individuals that commented at the Big Sky hearing. Thus, in this case the right to judicial review is limited to those who had an interest in real property affected by a land use decision and who provided comment at the hearing. *See also Evans,* 139 Idaho at 75, 73 P.3d at 88.

Next, we find that the record contains sufficient allegations that the LCO could potentially harm the individual property owners' real estate and health interests. *See Hawkins v. Bonneville Cnty. Bd. Of Com'rs,* 151 Idaho 228, 231, 254 P.3d 1224, 1227 (2011) (citing *Evans v. Teton Cnty.*, 139 Idaho 71, 76, 73 P.3d 84, 89 (2003)); *see also Davisco Foods Int'l, Inc. v. Gooding Cnty.,* 141 Idaho 784, 787, 118 P.3d 116, 119 (2005) (finding property interest adversely affected by possibility to smell odors on property sufficient for standing in special use permit proceeding). Evidence was presented to the Board regarding probable compromised resale value of existing homes in the area, odors, and possible health concerns. These could each be categorized as threatened harm.

The district court found in its decision that Idaho Rural Council, Inc. and ICARE had members whose primary residences were within one mile of the proposed LCO, and indicated specifically that "Idaho Rural Council alleges they have several members who own and farm real

property adjacent to the proposed site and several who live on that property. . . . Those people may be adversely affected, and face potential harm, if the proposed site is developed." The record on appeal includes an affidavit from the Idaho Rural Council, Inc. stating that "several [members] own and farm real property adjacent to the proposed Big Sky LCO and . . . several who live on such real property." Included in those members are Dean and Eden Dimond and Harold and Carolyn Dimond, individual appellants in this appeal. An affidavit from ICARE names three members whose primary residences are within one mile of the proposed LCO, Brenda Herrmann, Jim Stewart, and Dick Helsley.

> This Court has recognized standing for associations on behalf of its members when:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit.

*Beach Lateral Water Users Ass'n v. Harrison*, 142 Idaho 600, 604, 130 P.3d 1138, 1142 (2006) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). Both Idaho Rural Council, Inc. and ICARE have individual members that would otherwise have standing to sue in their own right as the members own property and reside in the area they claim would be adversely affected if the LCO is permitted to be developed. Next, both organizations support, among other issues, the promotion of sustainable farming in the area and healthy soil for present and future agricultural use. The organizations sought to protect these interests by participating in the LCO permit hearing and the subsequent litigation. Finally, for purposes of Idaho Rural Council's standing or ICARE's standing, this case does not require the participation of individual members. Idaho Rural Council, Inc. and ICARE have standing to appeal the Board's decision.

The district court found that Friends of Minidoka, along with three other organizations not part of this appeal, lacked standing. The district court found specifically that "there is no specific allegation that any identified member of any of these organizations live in proximity to the proposed LCO site, or would be harmed by its presence. At best [the affidavits of these organizations] voice concerns on behalf of unidentified members of their organizations, none of whom individually would have standing to participate in this appeal." Here, any allegations of injury would be the same as any member of the jurisdiction; a member of Friends of Minidoka has not been identified in the record as an individual who would suffer an injury unlike all

15

citizens affected by the proposed LCO site. *See Miles,* 116 Idaho at 641, 778 P.2d at 763. As the record does not include any indication that Friends of Minidoka had a member who was an affected party suffering potential harm to real estate in the area surrounding the proposed LCO site, Friends of Minidoka cannot meet the first requirement for associational standing—no member has standing to sue in their own right. *See Beach Lateral,* 142 Idaho at 604, 130 P.3d at 1142. Therefore, we find that Friends of Minidoka lacks standing.

**B.  The Board's process for presenting evidence did not violate procedural due process rights.**

Appellants argue that the Board failed to give them an opportunity to present and rebut evidence at a meaningful time and in a meaningful manner at the public hearings. They also argue that Mr. Slone was not provided with actual notice of the public hearings. We disagree with the Appellants and find that their procedural due process rights were not violated.

According to I.C. § 67-6529, regarding LCOs, a board of county commissioners must provide at a minimum:

> at least one (1) public hearing affording the public an opportunity to comment on each proposed site before the siting of such facility. Several sites may be considered at any one (1) public hearing. Only members of the public with their primary residence within a one (1) mile radius of a proposed site may provide comment at the hearing. However, this distance may be increased by the board. A record of each hearing and comments received shall be made by the board. The comments shall be duly considered by the board when deciding whether to approve or reject a proposed site. A board of county commissioners may reject a site regardless of the approval or rejection of the site by a state agency.

Idaho Code § 67-6529(2). When a relevant statute requires specific notice and hearing requirements for a possible effect of a zoning law on property rights, or in some instances merely where a body gives such notice and hearing, the action is said to be quasi-judicial in nature. *Castaneda v. Brighton Corp.,* 130 Idaho 923, 927, 950 P.2d 1262, 1266 (1998). The notice and hearing thus becomes necessary for due process, and such requirements may not be dispensed with. *Id.* (citing *Jerome Cnty. v. Holloway,* 118 Idaho 681, 684, 799 P.2d 969, 972 (1990)). "Highly particularized land use decisions," or the application by a zoning body of general rules or policies to individuals, interests, or situations that are specific are considered by this Court to be quasi-judicial in nature. *Chambers v. Kootenai Cnty Bd. of Comm'rs*, 125 Idaho 115, 118, 867 P.2d 989, 992 (1994); *Cooper v. Board of Cnty Comm'rs of Ada Cnty.*, 101 Idaho 407, 410-11, 614 P.2d 947, 950-51 (1980).

16

For quasi-judicial proceedings, procedural due process requires that:

> there must be some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions. This requirement is met when [a party] is provided with notice and an opportunity to be heard. The opportunity to be heard must occur at a meaningful time and in a meaningful manner in order to satisfy the due process requirement. Due process is not a concept to be applied rigidly in every matter. Rather, it is a flexible concept calling for such procedural protections as are warranted by the particular situation.

*Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 91, 982 P.2d 917, 926 (1999) (internal quotations and citations omitted). For planning and zoning decisions, this requirement for notice and an opportunity to be heard specifically calls for "(a) notice of the proceedings, (b) a transcribable verbatim record of the proceedings, (c) specific, written findings of fact, and (d) an opportunity to present and rebut evidence." *Cowan*, 143 Idaho at 510, 148 P.3d at 1256. The statutory requirements and Board's enactments for the hearing in this case, as well as the highly particularized nature of the LCO permit application decision, show that the proceeding is a quasi-judicial consideration.

On September 10, 2007, the Board adopted what would become the final procedures for the hearing: four minutes for oral testimony before the Board along with one 8.5″ x 11″ single-sided sheet of paper as an exhibit, or two sheets if one chose not to testify. All property owners having a primary residence within a one mile radius of the proposed LCO site were previously given fifteen days from publication of the notice of the hearing in the *Jerome North Side News* to submit unlimited written comments. The notice of the newly adopted procedures for the hearing on September 25-26, 2007, was mailed to the property owners within the one-mile radius on September 11, 2007, and published in the newspaper on September 13, 2007. Mr. Slone's attorney notified the Board on September 11, 2007, that Mr. Slone, a property owner within the one-mile radius, had not received the mailed notice, and a notice was mailed to him on September 14, 2007, but was not received until the deadline for written comments had lapsed. According to the record, Mr. Slone had not received a mailed notice because no residence existed on his property within the one-mile radius, and thus was not considered by the county to be a primary resident.

On appeal, Appellants argue specifically that their procedural due process rights have been violated because (1) the Board failed to provide Appellants the opportunity to present and rebut evidence at the hearing in a meaningful manner at a meaningful time, and (2) the Board

17

failed to provide actual sufficient notice of the hearing to Mr. Slone. Appellants cite to the limitations of four minutes to speak at the hearing and one page of written evidence (two if no spoken testimony) and "no mechanism" for rebutting evidence as not satisfying I.C. § 67-6534 or due process. Also cited is the failure to provide Mr. Slone timely notice of the hearing and a failure to make a verbatim transcript of the hearing, stating this violated fundamental procedural due process.

1. Opportunity to be heard

In *Castaneda,* this Court held that Boise City did not impair any of the appellants' due process rights when it approved a subdivision plat after a public hearing. 130 Idaho at 927-28, 950 P.2d at 1266-67. After citing to the "at a meaningful time and in a meaningful manner" language, this Court found that the hearing was held at a time and in a manner at which the appellants were able to be heard at "the most meaningful time" after finding that sufficient time was given in notice of the hearing. *Id*. at 927, 950 P.2d at 1266. No specifics of the procedure followed at the hearing in *Casaneda* were stated by this Court beyond the fact that two of the appellants were present, and even then, there was no indication of whether they had spoken at the hearing. *Id*. Also, notice was provided by a posting twenty-four hours in advance at city hall, a publication notice nearly two months in advance, and a mailed notice to all property owners within 300 feet of the affected property. *Id*.

In *Cowan,* this Court held that the appellant's due process rights were not violated by the hearing procedures set by the Board of Commissioners of Fremont County. 143 Idaho at 512-13, 148 P.3d at 1258-59. Again, this Court held that the most meaningful time to be heard was at the public hearing, and in the case of *Cowan*, appeals hearings, at which appellant and appellant's attorney were given an opportunity to speak and present evidence. *Id*. At these hearings, each person was requested by the board to limit comments to a few minutes. *Id.* at 512, 148 P.3d at 1258. Although this Court found that the appellant was given an opportunity to be heard, it did state that "limiting public comment to two minutes is not consistent with affording an individual a meaningful opportunity to be heard." *Id*., *but see Neighbors,* 145 Idaho at 127, 176 P.3d at 132 ("In *Cowan*, this Court held the Commission's action did not violate Cowan's due process rights where Cowan had a meaningful opportunity to be heard even though the planning and zoning commission limited public comment on the issue to two minutes . . . .").

18

Also, in *Neighbors,* this Court held that the appellant was not denied due process where the appellant's attorney presented exhibits and a written objection at one hearing, and presented oral testimony and written exhibits at a subsequent hearing before the Valley County Board of Commissioners. 145 Idaho at 128, 176 P.3d at 133. We stated that the opportunity to speak was similar to the opportunity given in *Cowan. Id.* In response to the appellant's argument that it was unable to submit suitable rebuttal evidence because it was unaware of a modified plan, this Court held that sufficient notice was given, as well as a continuation of the hearing to give appellant's attorney "adequate time" to review the plan for rebuttal. *Id.*

In the present case, Dean and Eden Dimond were able to present a packet of documents before the hearing through their attorney, and Mrs. Dimond testified and presented written testimony during the hearing. Both are also members of Idaho Rural Council, Inc. Harold and Carolyn Dimond each testified at the hearing and submitted written exhibits at the hearing. Both testified that they owned a farm next to the proposed LCO, that they had been denied the opportunity to submit written evidence prior to the hearing, and that they had been denied the right to have their attorney present at the hearing. Harold and Carolyn Dimond are also members of Idaho Rural Council, Inc. Members of ICARE also testified at the hearing, with member Jim Stewart receiving fifteen minutes to rebut evidence. Members Jim Stewart and Brenda Herrmann also submitted exhibits at the hearing. During the hearing, ICARE's executive director attempted to submit six exhibits but was told she could only submit one page. ICARE member Jim Stewart was not allowed to present a map he had created as a written exhibit before the hearing because of the size of the map. ICARE's executive director also attempted to submit pre-hearing exhibits but was told that she was not allowed to since she was not a resident in the one-mile radius.

In relation to the three cases, *Castaneda, Cowan*, and *Neighbors* cited above, Appellants have been provided with the same opportunity to be heard, if not more than that approved by these cases. First, it must be noted that the Board recognized itself that it initially may not have been providing an adequate opportunity to be heard and changed the time limit for testimony during the hearing per person to four minutes instead of two. Also, each person was given an opportunity to present two pages of written evidence instead of one, although those choosing to testify orally were still limited to one page. The Board also allowed a previously designated individual extra time for rebuttal to the Big Sky attorney's remarks. In addition to the

procedures for the hearing, all property owners with a primary residence within the one-mile radius were given fifteen days after the publication of the notice to present unlimited written evidence. Each individual or individual member of an appellant organization, except for Dean Dimond, had an opportunity to share oral testimony with the Board at the hearing. This is more than what the appellants in *Castaneda* took advantage of, yet was found to be an opportunity to be heard. *See* 130 Idaho at 927-28, 950 P.2d at 1266-67. In addition, at least five of the appellants submitted one-page written exhibits at the hearing, and two appellants were eventually allowed to submit over 400 pages of exhibits before the hearing. In relation to the opportunity to be heard that was found to not violate due process rights in *Cowan*, this case is no different, as the appellant in *Cowan* and his attorney were able to present evidence as well as speak at the public hearing. *See* 143 Idaho at 512-13, 148 P.3d at 1258-59. Although two appellants in this case stated that they were denied their due process rights because they were denied their right to have an attorney present at the hearing, there is nothing in the record that would suggest this was due to any action of the Board. Finally, in relation to the appellant in *Neighbors*, Appellants in this case were also able to present exhibits and voice their objections at the hearing, with one individual given extra time by the Board for the specific task of rebutting Big Sky's evidence. *See* 145 Idaho at 128, 176 P.3d at 133.

Also, the Board met the minimum procedural requirements of I.C. § 67-6529(2). The statutory provision requires a Board to hold at least one public hearing. I.C. § 67-6529(2). The Board provided a public hearing on September 25-26, 2007, at which many individuals spoke and produced materials for the Board to consider. Next, I.C. § 67-6529(2) instructs that "[o]nly members of the public with their primary residence within a one (1) mile radius of a proposed site may provide comment at the hearing." Here, the Board allowed any member of the public to provide comment at the September 25-26, 2007 hearing, not just those residents that lived within a mile of the proposed site. Finally, I.C. § 67-6529(2) requires that the Board make a record of the hearing and comments, which is to be considered by the Board for its decision. The record on appeal includes such documentation of the hearing and comments, and there is not before this Court an argument that the Board did not consider these comments when it reached its decision. Although the appellants have provided argument for the issue of due process, the record does not include any showing that these alleged procedural due process violations have prejudiced substantial rights of the appellants. *See Neighbors*, 145 Idaho at 126, 176 P.3d at 131; *Chisholm,*

20

139 Idaho at 133, 75 P.3d at 187. We find that the Board provided a meaningful manner for Appellants to be heard.

For the question of whether Appellants were granted meaningful time to be heard, this Court stated explicitly in *Neighbors* that an appellant's due process rights were not violated by public comment limited to two minutes. 145 Idaho at 127, 176 P.3d at 132. Also, this Court has stated that due process "is not a concept to be applied rigidly in every matter. Rather, it is a flexible concept calling for such procedural protections as are warranted by the particular situation." *Aberdeen-Springfield*, 133 Idaho at 91, 982 P.2d at 926. Where the Board accepted nearly 500 pages worth of exhibits before the hearing and accepted written exhibits and oral testimony from at least 25 people at the hearing; where four minutes was given to each individual for oral testimony; where I.C. § 67-6529(2) requires the Board to only accept comment from those residents with a primary residence within a one-mile radius of the proposed site; where at least one resident opposed to the proposed site was given extra time in rebuttal; and where there is no argument or evidence presented that shows specifically how that which was not allowed to be presented prejudiced the appellants, this Court is left to conclude that meaningful time was given for public comment and rebuttal. While the record shows that documents were rejected during the pre-hearing material submission process, with the possible exception of a map that was declared by the county to be too big, no primary resident within the one-mile radius was prevented from presenting evidence. Idaho Code section 67-6529(2) requires no more than an opportunity to provide comment at the hearing itself to those residing within the radius; the opportunity to submit written evidence and exhibits before the hearing was allowed in addition to the minimal requirements of the statute. According to the county's ordinance, those wishing to present materials prior to the hearing who did not have a primary residence in accordance with I.C. 67-6529, were not allowed to do so. This is not in violation of procedural due process.

Although the district court came to a similar conclusion in its decision, it erred by relying on hearing procedures not in place for the September 25-26, 2007 hearing in addition to the facts as presented above. The Board sent out new notices after amending the hearing procedures on September 10, 2007. At the same time, the Board had amended the zoning ordinance to also include a provision allowing all public members an opportunity to submit unlimited written exhibits and documentary evidence as long as it was received no later than seven days before the

21

hearing; this amendment did not take effect until five days before the hearing. This procedural change was not included in the notices for the Big Sky LCO permit hearing. As it would be impossible for a public member to submit evidence under this ordinance because of the date limit, we find that the district court relied on erroneous information when it listed this change as part of the reasons appellants were provided an opportunity to be heard. *See Urrutia v. Blaine County*, 134 Idaho 353, 359, 2 P.3d 738, 744 (2000) ("Idaho law is well established that an applicant's rights are determined by the ordinance in existence at the time of filing an application."). Although it was error, we further find that the error was harmless as it does not affect the substantial rights of the appellants because there were additional sufficient facts on which to base the conclusion that the appellants' procedural due process rights were not violated. *See* I.R.C.P. 61.

2. Notice

In addition to the "opportunity to be heard" requirement of procedural due process, there must also be notice to ensure an "individual is not arbitrarily deprived of his rights." *Aberdeen-Springfield*, 133 Idaho at 91, 982 P.2d at 926. Mr. Slone argues on appeal that he did not receive adequate notice, and that in the subsequent Board meeting where Mr. Slone's notice and the possibility of pushing back the hearing were discussed, the Board did not provide a "transcribable verbatim record of that hearing."

On September 13, 2007, the Board received a letter from Mr. Slone's attorney stating that Mr. Slone had not received written notice. Mr. Slone was mailed a copy of the previously mailed notice the next day. Mr. Slone did not previously receive a mailed notice because it was found by the county officials that there was no residence on his property that was within the one mile radius, which was required for notice in the zoning ordinance in accordance with I.C. § 67-6529(2). Mr. Slone was not entitled to the extra mailed notice. *See Cowan*, 143 Idaho at 508, 148 P.3d at 1254.

Regardless of whether Mr. Slone had received a mailed notice on time, the fact remains that somehow Mr. Slone was aware of the proposed LCO and was in fact on notice of the upcoming hearing. Notice in this case was provided by mailed notices to property owners with residences within the one-mile radius, publication in the local newspaper, posting of notice at the place of the hearing, and posting of notice at the Big Sky property. The notice given in this case is similar to the notice provided for in *Castaneda*: a posting twenty-four hours in advance at city

22

hall, publication two months in advance, and mailed notice to property owners in the vicinity of the proposed subdivision. 130 Idaho at 927-28, 950 P.2d at 1266-67. Although Mr. Slone was not provided a continuation of the hearing as the appellant's attorney in *Neighbors* received, there was still adequate time for preparation of exhibits between the original publication of the initial hearings on July 19, 2007, and the time the actual hearing was held, September 25-26, 2007. If in fact Mr. Slone did not have actual notice of the hearing until September, 13, 2007, when the letter was received by the Board, he still had time to prepare exhibits, and was still given the same opportunity to be heard as everyone else—an opportunity that has been found to not violate any due process rights. As for Appellants' argument that the lack of a verbatim transcript prejudiced Mr. Slone, there is no sufficient reason or authority given that would require this Court to find that the Board meeting discussing Mr. Slone's letter required a verbatim transcript. *See* I.A.R. 35(a)(6). Therefore, we find that Mr. Slone's due process rights were not violated by the Board and that he was provided with notice and an opportunity to be heard.

## C. Idaho Code section 67-6529's "one mile rule" is constitutional.

Appellants argue that the "one mile" exclusion in I.C. § 67-6529(2) arbitrarily and unreasonably limits who may participate at an LCO public hearing to those having a primary residence within one mile of the proposed LCO site. We find that the one mile radius limitation of I.C. § 67-6529(2) is rationally related to a legitimate governmental purpose.

We apply the rational basis test's deferential standard of review when dealing with legislation regarding economic interests. *Bradbury v. Idaho Judicial Council*, 136 Idaho 63, 69, 28 P.3d 1006, 1012 (2001). "[S]ubstantive due process requires that 'a statute bear a reasonable relationship to a permissible legislative objective.'" *Id.* (quoting *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 90, 982 P.2d 917, 925 (1999)). Where it is at least debatable that governmental conduct is rationally related to a legitimate governmental interest, no violation of substantive due process will be found. *State v. Bennett*, 142 Idaho 166, 169, 125 P.3d 522, 525 (2005). In this context, legislative acts are presumed valid and only overcome by clearly showing arbitrariness and irrationality. *Id.* at 171, 125 P.3d at 527.

As indicated above, I.C. § 67-6529(2) states that during the process for a proposed LCO permit application, "[o]nly members of the public with their primary residence within a one (1) mile radius of a proposed site may provide comment at the hearing." In this case, there is no

23

showing that the "one-mile rule" was arbitrary and irrational. The state clearly has an interest in promoting efficiency, and the provision certainly allows for an efficient hearing process for the Board to collect comments and to hear from those wishing to comment.

Alternatively, Appellants ask this Court to examine the constitutionality of I.C. § 67-6529(2) *sua sponte* under the doctrine of equal protection. The government is given wide discretion to enact laws that affect certain groups of people differently than others. *McLean v. Maverik Country Stores, Inc.*, 142 Idaho 810, 814, 135 P.3d 756, 760 (2006). Such classifications that are not suspect or discriminatory will survive rational basis analysis "'if the classification is rationally related to a legitimate governmental purpose.'" *Id.* (quoting *Meisner v. Potlatch Corp.*, 131 Idaho 258, 262, 954 P.2d 676, 680 (1998)). In this case, the classification is primary residents within a one-mile radius of the proposed LCO site, as distinguished from residents outside this radius. Again, as above, there is no indication that the classification is a result of an arbitrarily and irrationally legislated rule. The state is allowed to limit for the sake of efficiency and expediency the class of those permitted to comment during the LCO permit application process. Further, the limitation is merely a minimum, as I.C. § 67-6529(2) gives a board the discretion to increase the radius to allow for more comment, which was done for the hearing in this case. The distance was extended for those wishing to comment during the hearing, but not for the pre-hearing submissions, as any member of the public was allowed an opportunity to comment. Therefore, we find that the "one mile rule" in I.C. § 67-6529(2) does not violate the Appellants' due process or equal protection rights in this case.

**D. The Board properly applied its relevant zoning ordinances when it approved the permit application.**

Appellants argue that the Board did not comply with the entire zoning ordinance as required for the approval of a LCO permit application. As the Appellants have not identified how the Board failed to follow the zoning ordinances, we disagree.

On May 3, 2007, the date Big Sky filed its application, section 13-3.01 of the Jerome County Zoning Ordinance (JCZO) for permitted locations of LCOs read: "New LCO's [sic] shall be allowed only in Agricultural A-1 Zone, and only after compliance with the provisions of this Chapter and the JCZO." Section 1-3.01 states:

> This ordinance has been made in accordance with a comprehensive plan which has been designed to protect and promote the health, safety, morals, and general welfare of the community. It is intended, therefore to provide:

a. Support of property values by preserving existing uses and guiding future development.
b. Protection from the menace to the public safety that would result from placing buildings or other structures in locations and in manners that would interfere with present or future traffic movement.
c. Pleasant appearances along highways and elsewhere in the county.
d. Adequate public facilities and services.
e. Support for the economy of the county.
f. Protection for prime agricultural lands for production of food and fiber.
g. Support for agriculture and other industry together with related uses.
h. Assurance that the important environmental features of the county are protected and enhanced.
i. Avoidance of undue concentrations of population.
j. Assurance that land is developed appropriately for its physical characteristics.
k. Protection for life and property in areas subject to natural hazards and disasters.
1. Protection for fish, other wildlife, and recreational resources.
m. Security against undue pollution of air and water.

Appellants argue that section 13-3.01 requires the Board to only approve applications that comply with the comprehensive plan and cite section 1-3.01 as authority. First, for argument sake, if section 1-3.01 did require the Board to also comply with the provisions of the county's comprehensive plan, no provisions of the comprehensive plan have been presented that the Board has failed to comply with that this Court could consider. Next, the plain meaning of section 1-3.01 does not present any additional requirements; it is merely a statement of the purpose and intentions of the county ordinance. The ordinance was made in *accordance* with the county's comprehensive plan and is meant to agree with and conform to the comprehensive plan, not make additional requirements.

> A comprehensive plan is not a legally controlling zoning law, it serves as a guide to local government agencies charged with making zoning decisions. The in accordance with language of I.C. § 67-6511 does not require zoning decisions to strictly conform to the land use designations of the comprehensive plan.

*Evans*, 139 Idaho at 76, 73 P.3d at 89 (internal citations and quotations omitted).

Finally, the record does not suggest that the Board failed to recognize the entirety of the zoning ordinance, and in its September 23, 2008 Memorandum Decision, the Board specifically stated that it had "recognize[d] these other standards and criteria and knew [what] they included." The Board went on to state that Big Sky had addressed these issues and had presented undisputed evidence; thus the Board accepted them in their findings of facts. In regards to the

25

interpretation and application of the Board's ordinance, this Court will defer to the Board as it is entitled to a strong presumption of validity as long as the application is not capricious, arbitrary, or discriminatory. *Chisholm,* 139 Idaho at 133-34, 75 P.3d at 187-88. Further, this Court will not substitute its judgment for that of the board's as to the weight of the evidence on questions of fact. *Cowan*, 143 Idaho at 508, 148 P.3d at 1254. Accordingly, we find that the Board did not fail to follow the relevant ordinances.

### E. The district court correctly denied Jerome County attorney fees.

Jerome County argues that the district court failed to award it attorney fees based on the fact that it was the prevailing party and that Appellants have acted without a reasonable basis of fact. We disagree.

The district court denied Jerome County's requests for attorney fees pursuant to I.C. § 12-117 in its August 5, 2010 decision. On appeal, Jerome County stated that it was aware that courts could no longer award attorney fees pursuant to I.C. § 12-117, but argues that this interpretation does not apply retroactively to the date the petition for judicial review was filed. This issue has already been resolved. In *Jasso v. Camas County*, this Court stated:

> This Court's decision in *Smith v. Washington County*, 150 Idaho 388, 247 P.3d 615 (2010), is dispositive. In *Smith*, we noted that the plain language of the 2010 legislative amendment to I.C. § 12–117 distinguished 'administrative proceedings' from 'civil judicial proceedings,' and thus empowered agencies to award attorney fees in administrative proceedings while limiting civil court awards of attorney fees to only those proceedings that originated with the filing of a civil complaint. [150 Idaho 388, 391, 247 P.3d 615, 618 (2010)] 'I.C. § 12–117(1) does not allow a court to award attorney fees in an appeal from an administrative decision.' *Id*. Although the district court's decision predated the 2010 amendment, the legislature explicitly provided that the amendment would retroactively apply to all cases filed and pending as of June 1, 2009.

151 Idaho 790, 799, 264 P.3d 897, 906 (2011). As of June 1, 2009, the present case on a petition for judicial review was pending a decision. "[A]s a petition for judicial review is neither an 'administrative proceeding' nor a 'civil judicial proceeding,'" no attorney fees can be awarded in this case pursuant to I.C. § 12-117. *In re City of Shelley*, 151 Idaho 289, 295, 255 P.3d 1175, 1181 (2011). Incidentally, on March 27, 2012, I.C. § 12-117 was once again amended by the Idaho Legislature. The recent amendment's emergency clause does not apply retroactively to all filed and pending cases, as did its predecessor, explained above in *Jasso v. Camas County*. Therefore, we find that the district court correctly denied Jerome County's request for attorney fees pursuant to I.C. § 12-117.

26

**F. Neither party is entitled to attorney fees on appeal.**

Each party has requested attorney fees on appeal pursuant to I.C. § 12-117. As explained above, previously I.C. § 12-117 did not authorize awards of attorney fees in a case originating before a court on a petition for judicial review. *Jasso,* 151 Idaho at 799, 264 P.3d at 906. The newest amendment states in part:

> (1) Unless otherwise provided by statute, in any proceeding involving as adverse parties a state agency or a political subdivision and a person, the state agency, political subdivision or the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

I.C. § 12-117. Thus, this statute now requires this Court on appeal to award a prevailing party reasonable attorney fees if we find that the nonprevailing party did not act with a reasonable basis in fact or law on appeal. *See also Reardon v. City of Burley*, 140 Idaho 115, 118, 90 P.3d 340, 343 (2004) *rev'd on other grounds, City of Osburn v. Randel*, __ Idaho __, 277 P.3d 353 (2012)). Although we find Jerome County to be the prevailing party, we do not find that the Appellants have acted without a reasonable basis in fact or law. Accordingly, we find that no party is entitled to attorney fees on appeal.

## IV. CONCLUSION

Although we find that Friends of Minidoka lacks standing, the individuals and remaining appellant-organizations had standing to pursue the petition for judicial review. We also find that the appellants' procedural due process rights were not violated and that the appellants have failed to show that I.C. § 67-6529(2) is unconstitutional. Also, we find that the Board followed all relevant ordinances. Finally, we find that the district court correctly ruled that Jerome County was not allowed attorney fees on judicial review pursuant to I.C. § 12-117 and that no party is entitled to attorney fees on appeal. Costs to Jerome County.

Justices EISMANN, W. JONES, HORTON and KIDWELL, J., PRO TEM, **CONCUR.**