# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 48799

KIKI LESLIE A. TIDWELL, an individual; )
and THE MADISON JEAN TIDWELL )
QUALIFIED SUBCHAPTER S TRUST, a )
legal entity organized under the laws of the )
State of Idaho, )
  )
    **Plaintiffs-Respondents** )
    **Cross-Appellants** )
  ) **Boise, August 2022 Term**
vs. )
  ) **Opinion filed: October 4, 2023**
BLAINE COUNTY, a political subdivision of )
the State of Idaho; ARCH COMMUNITY ) **Melanie Gagnepain, Clerk**
HOUSING TRUST, INC., an Idaho )
corporation; BLAINE COUNTY HOUSING )
AUTHORITY, a public agency of the State of )
Idaho; and John Does 1-5, )
  )
    **Defendants-Appellants** )
    **Cross-Respondents** )
_____ )

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Michael P. Tribe, District Judge.

The judgment of the district court is <u>vacated</u> and the matter is <u>remanded</u> to the district court for entry of a dismissal.

Lawson Laski Clark, PLLC, Ketchum, and Blaine County Prosecuting Attorney, Hailey, attorneys for Appellants. Timothy Graves and Heather O'Leary argued.

Givens Pursley LLP, Boise, attorneys for Respondents. Gary Allen argued.

_____

BEVAN, Chief Justice.

This appeal arises from a dispute over the meaning of the term "public use" in a deed. Kiki Leslie Tidwell ("Tidwell") and the Madison Jean Tidwell Trust (collectively "Plaintiffs") opposed an affordable housing project on land dedicated to Blaine County for public use. Plaintiffs contend the Final Plat contemplated the land be held for open space and recreational use, but Blaine County contracted with ARCH Community Housing Trust ("ARCH") and Blaine County Housing

1

Authority ("BCHA") to donate a parcel—Parcel C—to BCHA to construct community housing. Plaintiffs filed a complaint against the County, ARCH, and BCHA (collectively "the County")[1] seeking declaratory relief, injunctive relief, and damages to Tidwell under 42 U.S.C. section 1983. The district court ultimately dismissed Tidwell's section 1983 claim, but the district court allowed Plaintiffs to pursue the remaining claims, despite the County's contention that Plaintiffs lacked standing to bring the complaint. Following a series of unsuccessful dispositive motions seeking summary and partial summary judgment on both sides, the case proceeded to court trial, where Plaintiffs prevailed on both claims for declaratory and injunctive relief. The district court denied Tidwell's request for attorney fees. The County appealed, and Tidwell cross-appealed the dismissal of her section 1983 claim and both Plaintiffs appeal the district court's denial of attorney fees.

On appeal, the County argues Plaintiffs lack standing to bring their claims because Plaintiffs have no particularized interest in the parcel and suffer no particularized injury. If Plaintiffs have standing, the County claims the district court erred by concluding the Final Plat was ambiguous and by permitting extrinsic evidence, including testimony of what the parties intended to construct on the parcel when the land was transferred. The Plaintiffs have cross-appealed, with Tidwell alleging the district court erred in dismissing her procedural and substantive due process claims brought under 42 U.S.C. section 1983. Both Plaintiffs also contend the district court abused its discretion in denying their claim for attorney fees. For the reasons discussed below, we affirm in part, and reverse in part.

### I. FACTUAL AND PROCEDURAL BACKGROUND

#### A. Factual Background

Around January 2004, The Valley Club, Inc. ("Valley Club") applied to the Blaine County Board of County Commissioners ("the Board") to create a Planned Unit Development by subdividing and platting 117.35 acres, which would be called The Valley Club West Nine PUD ("the Valley Club PUD"). The Valley Club PUD would be slightly north of Hailey, Idaho, in

---

[1] Blaine County, ARCH, and BCHA filed answers and motions separately in the proceedings below. On appeal, however, these parties consolidated their arguments and bring their appeal against the Plaintiffs collectively. Thus, where the parties have filed separate motions below, we will identify the party responsible for that filing, but we will refer to "the County" as the party raising arguments on appeal.

Blaine County. Two of the parcels (Parcel B and Parcel C) would be "public use" parcels totaling 1.56 acres.

On July 14, 2005, the Board conducted a public hearing to consider the Valley Club's application. The application was approved, and the Board issued its "Large Block Final Plat Findings, Conclusions & Decision" ("Final Decision").

The Final Decision instructed the Valley Club to record a final plat for the Valley Club PUD comprising Parcel A ("Golf Course Parcel"), Block 1 ("Village Green Block"), Block 2 ("Community Housing Block"), and Parcel B and Parcel C, which were for "public use." The Valley Club PUD Final Plat ("Final Plat") was recorded on July 15, 2005. The Final Decision also instructed the Valley Club to deed Parcels B and C to Blaine County for open space and future public use as determined by the County. The Valley Club PUD deeded Parcels B and C to Blaine County on July 22, 2005.

The deed referred to the Final Decision and its limitations, which included the "open space or future recreational use" restriction for Parcel C. The Final Plat labeled Parcels B and C as "public use," labeled Block 1 as "residential," and labeled Block 2 as "community housing." No development occurred on Parcel C for nearly ten years, and its use reflected the Final Decision's mandate that its use be limited to "public open space or future recreational use[.]" Near the end of the ten-year period, ARCH first inquired about constructing community housing on Parcels B and C.

On March 17, 2015, ARCH asked the Board during its regular meeting what was contemplated by the term "public use" in the Final Decision. ARCH expressed an interest in building community housing on Parcels B and C. ARCH explained that twelve residential units that were intended to be constructed were originally designated as community housing to enable higher population density in the Valley Club PUD, but the community housing restrictions on those units lapsed. Because the Final Plat did not allow community housing on Parcels B and C, ARCH asked the Board to consider a "minor amendment" of what was originally contemplated as "public use" in the PUD application or approval process and asked the Board to find that community housing was a "public use."

The Board recognized that neither it nor the County could lawfully lease the County-owned properties (Parcels B and C) to another, but the Board noted that it could donate the land to a different political entity such as BCHA. During this March 15th meeting, the Board then opened

3

the meeting to public comment on ARCH's request to use the parcels for community housing. At that time, the Valley Club noted Parcels B and C were intended for a firehouse and open space, and they should remain open space and be available for recreation. The Valley Club also noted there was no method the County could pursue to convey the property to BCHA. Most public comments related to a lack of water and septic capacity to serve new housing. Many parties came forward to explain there was no water for new construction, and the Idaho Department of Water Resources said drilling a new well was not an option.

Undeterred, the Blaine County Land Use and Building Services ("BCLUBS") considered a request from ARCH to provide an opinion on what "public use" meant related to Parcels B and C. In April 2015, BCLUBS's director, Tom Bergin, issued a written "administrative determination" answering ARCH's request ("Land Use Opinion"). The Land Use Opinion did not address the definitions or guidance in the Final Plat, but instead considered other definitions of the term "public use" in the Blaine County Code.

Ultimately, the Board considered ARCH's request to obtain Parcels B and C to construct housing at a second meeting on June 30, 2015. At the second meeting, the Board concluded that community housing was an appropriate public use of Parcels B and C. Bergin also explained there were no applicable plat notes that needed to be accounted for in considering ARCH's request. Bergin did not, however, explain why the Final Decision's definition of "public use" was not considered. At this meeting, the County acknowledged it could not transfer Parcels B and C to ARCH without going to public auction under Idaho law. Even so, County Commissioner Larry Schoen suggested the County deed Parcels B and C to BCHA to develop them for community housing with ARCH. More public comment was taken, and the public again raised concerns related to insufficient water supply for the proposed project.

On August 10, 2015, the Valley Club Board of Directors ("Board of Directors") submitted a formal complaint to Blaine County, along with a memorandum, arguing against (1) transferring Parcels B and C of the Valley Club PUD to BCHA and ARCH and (2) constructing any housing on those parcels. In their complaint, the Board of Directors argued the transfer was illegal, the proposed use violated the Valley Club PUD, and the County's determination on public use was erroneous. Some residents also expressed concerns that Parcel B was not being developed properly per the Final Plat. Among those residents was Kiki Tidwell, who, around July 30, 2016, had

4

observed problems on Parcel C connected to developing Parcel B, including trucks parking on Parcel C.

On September 8, 2015, Blaine County Commissioners passed Blaine County Resolution 2015-32, which transferred ownership of Parcels B and C to BCHA expressly to build community housing. Then, between October 22, 2017, and October 24, 2017, Tidwell and Schoen exchanged emails about the development of Parcels B and C, with Tidwell explaining her concerns to Schoen. Schoen responded to Tidwell that the County's decision on both Parcels was correct, and Tidwell had no recourse. Tidwell provided written and verbal requests to the County to notify her of applications involving Parcel C, but she received no notice.

A few months later, the BCLUBS administrator issued Building Permit #2017-157 to ARCH. This permit authorized construction of a duplex at 3702 Buttercup Road (Parcel C). Tidwell appealed that decision to the Board. The Board heard the appeal on May 1, 2018, and filed a decision on appeal affirming the administrator's decision on June 5, 2018. A week later, the Board filed a revised decision affirming the decision.

## B. Procedural Background

Plaintiffs filed a three-count complaint in district court seeking (1) declaratory relief; (2) injunctive relief; and (3) damages for Tidwell personally for the County's violation of procedural and substantive due process under 42 U.S.C. section 1983. The same day, Plaintiffs moved for a preliminary injunction to prevent the County from constructing housing on Parcel C, which the County opposed. The County, BCHA, and ARCH opposed the Plaintiffs' motion for a preliminary injunction, contending that Plaintiffs lacked standing and had failed to show demonstrable harm from the development on Parcel C. On October 30, 2018, the district court denied Plaintiffs' motion for preliminary injunction. Before reaching this conclusion, the district court explained at the hearing on the motion for preliminary injunction:

> Parcel C is located approximately nine-tenths of a mile and four-tenths of a mile from Plaintiff's home and the trust property, [respectively]. Ms. Tidwell is the manager of the trust. The two pieces of real property are not adjacent to Parcel C.
>
> . . .
>
> So it's the Court's opinion that, all together, that there is -- and the testimony was that the housing would change the nature of that parcel, would potentially block views, and really just the nature of the use -- so I think all together, I believe there is an injury in fact and find that she has standing and that the preliminary injunction would prevent the complained of injury if it was granted.

. . .

So with that, I then go into the preliminary injunction, the actual criteria. And just quoting broadly from *Harris v. Cassia County*, [106 Idaho 513, 517, 681 P.2d 988, 992 (1984),] "whether to grant or deny a preliminary injunction is a matter for the discretion of the trial court." A preliminary injunction should be "granted only in extreme cases where the right is very clear and it appears that irreparable injury will flow from its refusal."

. . .

And in this case, potentially – really talking about the waste element, and if there is waste, if the defendants did build a home and were ordered to tear that down, the waste is actually going to go to the defendant, not the plaintiff.

In viewing great injury, I believe there could be potentially injury to the property, but I don't view that as great injury. And regarding irreparable injury, as we discussed on the record, if the defendants were allowed to go forward and were eventually told that they had to take the house down, that injury could be fixed with having to tear it down.

So based on those issues, I find there's standing, but I'm going to deny the [m]otion [f]or [p]reliminary [i]njunction for the reasons stated under [Idaho Rule of Civil Procedure] 65(e)(1) and (2).

On November 23, 2018, ARCH and BCHA filed a joint memorandum supporting a motion for partial summary judgment. A few weeks later, on December 10, 2018, the County filed an Idaho Rule of Civil Procedure 12(b)(6) motion to dismiss Tidwell's section 1983 claim or, alternatively, moved for summary judgment under Idaho Rules of Civil Procedure 12(d) and 56(a). Plaintiffs opposed both motions. The district court heard oral arguments on the County's motion to dismiss, and on March 5, 2019, the court issued two decisions. First, the district court granted the County's Rule 12(b)(6) motion to dismiss Tidwell's section 1983 claim. The same day, the district court, though finding that the Plaintiffs had standing to bring their claims, granted ARCH and BCHA's partial summary judgment motion on Plaintiffs' claims for a declaratory judgment, concluding that "public use" was unambiguous.

The court entered judgment on March 11, 2019. But a few weeks later, Plaintiffs moved for reconsideration of the district court's decision granting partial summary judgment to ARCH and BCHA on interpreting "public use." The district court heard oral arguments on May 6, 2019, and took the matter under advisement. In July 2019, the court granted Plaintiffs' motion to reconsider the interpretation of "public use," reinstating the count for declaratory judgment.

6

BCHA and ARCH moved for partial summary judgment a second time. Plaintiffs also moved for summary judgment. The district court heard all such motions on November 27, 2019, and denied the motions on December 30, 2019.

Despite Plaintiffs' initial request for a jury trial, the district court issued a memorandum decision denying the request following a pretrial conference on March 9, 2020. The court determined that the only issues remaining to be resolved were legal and equitable questions for the court: whether Plaintiffs were entitled to a declaratory judgment and injunctive relief. Thus, the district court clarified it would decide those issues following a court trial.

A court trial was held over multiple dates in late 2020. The focus of the trial was whether the proposed community housing duplex was a proper "public use" of Parcel C. Both sides presented testimony and documentary evidence. At the end of the hearing, the district court requested that the parties provide briefing and proposed findings of fact and conclusions of law. The matter was submitted for final decision on January 28, 2021. The court's findings of fact are largely uncontested and make up the factual background set forth above.

In the district court's conclusions of law, it first held that Kiki Tidwell possessed an interest affected by the County's intent to allow construction of residential housing on Parcel C and had standing to bring her claim. The court then granted Plaintiffs relief on their equitable claims:

> Based on the [c]ourt's Findings of Fact set forth above, the [c]ourt concludes that both the County and the Valley Club intended for Parcel C to be dedicated to the County with the limitation that it be "for public open space or future recreational use as determined by the County and the Rec. District…." Final Plat Decision p. 4, ¶ 6.

> Based on the intent of the parties, the [c]ourt finds the term "public use" as used to describe Parcel C on the Final Plat means that the County and its successors in interest may only use Parcel C for public open space or future recreational use as determined by the County and the Rec. District, unless they lawfully obtain additional property rights from the underlying owner, the Valley Club.

> …

> In this case, Parcel C was created by the Final Plat and transferred to the County by deed rather than by effect of statute. The intent of the parties as to both the Final Plat and the Parcel C deed was to restrict Parcel C to "Public Use" as the [c]ourt has interpreted that term. *See Neider* [*v. Shaw*, 138 Idaho 503, 507, 65 P.3d 525, 529 (2003)] (transfer of property interest to public entity conveys only property interests needed for the intended public use).

> Therefore, the County received only an easement from the Valley Club to construct and maintain open space and/or recreational uses on Parcel C. As the County's

7

property rights were so limited, it could not and did not transfer to BCHA or ARCH property rights sufficient to construct and/or maintain community housing on Parcel C.

As a result, the County's issuance of Building Permit #2017-157 was unlawful because the applicant did not own the property rights necessary to construct community housing on Parcel C.

Plaintiffs are therefore entitled to the declaratory relief they sought in Count One of their [c]omplaint, and to the injunctive relief sought in Count Two of their [c]omplaint.

Following entry of the final judgment, the County, BCHA, and ARCH timely filed a joint notice of appeal. Soon after, Plaintiffs timely cross-appealed.

## II. STANDARDS OF REVIEW

"This Court employs the same standard as the district court when reviewing rulings on summary judgment motions." *Owen v. Smith*, 168 Idaho 633, 640, 485 P.3d 129, 136 (2021) (quoting *Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 166 Idaho 132, 140–41, 456 P.3d 201, 209–10 (2019)). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting I.R.C.P. 56(a)). "A moving party must support its assertion by citing particular materials in the record or by showing the 'materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[s].'" *Id.* (quoting I.R.C.P. 56(c)(1)(B)). "Summary judgment is improper 'if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented.'" *Owen*, 168 Idaho at 641, 485 P.3d at 137 (quoting *Trumble*, 166 Idaho at 141, 456 P.3d at 210). A "mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id*.

"[T]he issue of whether a district court has subject matter jurisdiction is a question of law, over which we exercise free review." *Valiant Idaho, LLC v. VP Inc*., 164 Idaho 314, 332, 429 P.3d 855, 873 (2018) (quoting *Slavens v. Slavens*, 161 Idaho 198, 201, 384 P.3d 962, 965 (2016)).

## III. ANALYSIS

The County challenges the district court's jurisdiction to consider Plaintiffs' complaint for a declaratory judgment, injunctive relief, and Tidwell's damages for alleged procedural and substantive due process violations under 42 U.S.C. section 1983, as well as other issues surrounding the district court's decision. Plaintiffs filed a cross-appeal raising two issues: whether

the district court erred in dismissing Tidwell's procedural due process violation claim under 42 U.S.C. section 1983 and whether the district court abused its discretion by denying Plaintiffs attorney fees under Idaho Code section 12-117.

**A.    The district court erred in concluding Plaintiffs have standing.**

The County's first argument on appeal is that the district court erred in determining Plaintiffs have standing to pursue their claims.[2] The County claims that, despite Tidwell's complete lack of participation in the Valley Club West 9 PUD proceedings, the district court "stacked" Plaintiffs' perceived injuries to confer standing. Plaintiffs counter that they have standing because they face several threatened harms from the County's proposed development.

Questions of jurisdiction must be addressed before reaching the merits of an appeal, and jurisdiction is a question of law over which we exercise free review. *Watkins v. Peacock*, 145 Idaho 704, 707, 184 P.3d 210, 213 (2008) (citing *Bach v. Miller*, 144 Idaho 142, 144–45, 158 P.3d 305, 307–08 (2007)). Subject matter jurisdiction has been defined as the power to hear and determine cases. *State v. Rogers*, 140 Idaho 223, 228, 91 P.3d 1127, 1132 (2004) (citing *Boughton v. Price*, 70 Idaho 243, 249, 215 P.2d 286, 289 (1950)). In addition, "[s]tanding is a preliminary question to be determined by this Court before reaching the merits of the case." *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002) (citing *Miles v. Idaho Power Co.*, 116 Idaho 635, 637, 778 P.2d 757, 759 (1989)).

Below, the district court found:

So it's the [c]ourt's opinion that, all together, that there is -- and the testimony was that the housing would change the nature of that parcel, would potentially block views, and really just the nature of the use -- so I think all together, I believe there is an injury in fact and find that [Plaintiffs have] standing and that the preliminary injunction would prevent the complained of injury if it was granted.

And I recognize that the third prong of [*In re Jerome Cnty. Bd. of Comm'rs*, 153 Idaho 298, 308, 281 P.3d 1076, 1086 (2012),] is the injury must not be suffered by all citizens alike. And part of my rationale is that she has several potential violations or potential things that would aggrieve her, but all those taken together allow her to have standing.

---

[2] In its Reply Brief, the County raises for the first time that Tidwell and the Trust sold their interest in the properties and, therefore, no longer have standing in this appeal. Any potential sale of the property does not impair Tidwell and the Trust's right to respond to the appeal brought against them or to cross-appeal the denial for a request of attorney fees or the dismissal of Tidwell's personal section 1983 claim.

The district court also denied the County's motion for summary judgment on this question, concluding: "The [c]ourt agrees that these additional items each do nothing more than add weight to the [c]ourt's original determination that Plaintiffs will suffer an injury. Each alone may not be enough to meet the threshold but collectively, the [c]ourt finds that there is an injury in fact."

"To satisfy the case or controversy requirement of standing, litigants generally must allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Boundary Backpackers v. Boundary Cnty.*, 128 Idaho 371, 375, 913 P.2d 1141, 1145 (1996). "Building upon these basic propositions, this Court also considers that standing 'may be predicated upon a threatened harm as well as a past injury.'" *In re Jerome Cnty. Bd. of Comm'rs*, 153 Idaho 298, 308, 281 P.3d 1076, 1086 (2012) (quoting *Schneider v. Howe*, 142 Idaho 767, 772, 133 P.3d 1232, 1237 (2006)). To establish injury in fact and redressability "requires a showing of distinct palpable injury and fairly traceable causal connection between the claimed injury and the challenged conduct." *Haight v. Idaho Dep't of Transp.*, 163 Idaho 383, 392, 414 P.3d 205, 214 (2018).

The doctrine of standing is a subcategory of justiciability. *Id*. Concepts of justiciability, including standing, identify appropriate or suitable cases for adjudication by a court. *Miles*, 116 Idaho at 639, 778 P.2d at 761. "The doctrine of standing focuses on the party seeking relief and not on the issues the party wishes to have adjudicated." *Id*. at 641, 778 P.2d at 763. "To satisfy the requirement of standing[,] litigants must allege an injury in fact, a fairly traceable causal connection between the claimed injury and the challenged conduct, and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Knox v. State ex rel. Otter*, 148 Idaho 324, 336, 223 P.3d 266, 278 (2009).

We begin by examining whether Plaintiffs' claims meet the framework we have identified for standing. The County does not challenge that there is a substantial likelihood that injunctive relief would redress Plaintiffs' claimed injury. Thus, our focus is on whether Plaintiffs have alleged an injury in fact and shown a fairly traceable causal connection between that injury and the proposed development. The County challenges a series of potential channels for standing, many of which the district court combined to conclude that Plaintiffs could proceed with their claims. Among these bases are: (1) the development would negatively impair Plaintiffs' property values; (2) Plaintiffs have a distinct, palpable injury; (3) the value of Tidwell's Valley Club membership would be impaired; and (4) there is a causal link between the proposed development and Plaintiffs'

10

alleged injury. We will address each in turn, but before we do, we discuss the dissent's challenge to this Court's embrace of federal standing principles. The dissent maintains that our case law has unnecessarily restrained Idahoans in their attempts to have claims resolved in Idaho courts. For nearly forty years, Idaho's appellate courts have embraced federal standing principles, including the requirement that a plaintiff suffer a concrete injury to bring a claim. *See Glengary-Gamlin Protective Ass'n, Inc. v. Bird*, 106 Idaho 84, 87, 675 P.2d 344, 347 (Ct. App. 1983); *Bradbury v. City of Lewiston*, ___ Idaho ___, ___, 533 P.3d 606, 624 (2023).

Idaho courts have, again and again, reaffirmed a commitment to the federal standards for Idaho's standing doctrine. *See, e.g.*, *Student Loan Fund v. Payette Cnty.*, 125 Idaho 824, 875 P.2d 236 (Ct. App. 1994); *Idaho Branch, Inc. of the Associated Gen. Contractors of Am., Inc. v. Nampa Highway Dist. No. 1*, 123 Idaho 237, 846 P.2d 239 (Ct. App. 1993); *Alpert v. Boise Water Corp.*, 118 Idaho 136, 795 P.2d 298 (1990); *Boundary Backpackers v. Boundary Cnty.*, 128 Idaho 371, 375, 913 P.2d 1141, 1145 (1996); *Selkirk-Priest Basin Ass'n. State ex rel. Batt*, 128 Idaho 831, 919 P.2d 1032 (1996); *Haight v. Idaho Dep't of Transp.*, 163 Idaho 383, 392, 414 P.3d 205, 214 (2018); *Knox v. State ex rel. Otter*, 148 Idaho 324, 336, 223 P.3d 266, 278 (2009); *In re Jerome Cnty. Bd. of Comm'rs*, 153 Idaho 298, 308, 281 P.3d 1076, 1086 (2012); *Idahoans for Open Primaries v. Labrador*, __ Idaho __, __, 533 P.3d 1262, 1272 (2023). While this Court was not required to adopt the federal standing doctrine, we have embraced these principles for decades. The notion that these cases were wrong when decided or when applied, as recently as a few weeks ago, would disregard precedent and eliminate the assurances that a party seeking relief has a personal stake in the outcome of the litigation. We decline the dissent's invitation to do so.

*1. Whether Plaintiffs' property values will be affected by the proposed development.*

The County challenges Plaintiffs' assertion that the construction of a nonconforming duplex would cause an injury because it would diminish their property values. Plaintiffs elaborate that because of the rural character of the area and the proximity of the properties to Parcel C, a nonconforming duplex at the main entrance to the neighborhood would diminish the value of all nearby properties. Plaintiffs contend that the effect on the neighborhood, and its potential effect on property values, is enough to confer standing.

Below, in an oral ruling on the preliminary injunction, the district court explained:

So, again, Ms. Tidwell testified that she regularly drives by Parcel C, testified that she regularly uses the bike path that is adjacent to Parcel C, regularly plays golf on

11

the course, and there was discussion about valuation or decreasing valuation at the hearing.

There was an objection, so there was really nothing before the [c]ourt regarding a loss of value where Plaintiff could develop that further if the matter were to proceed.

Both parties point to *Butters v. Hauser*, 131 Idaho 498, 501, 960 P.2d 181, 184 (1998), as germane to the facts here. In *Butters*, the Hausers applied for a conditional use permit to construct a radio transmission tower. *Id.* at 499, 960 P.2d at 182. The application was approved and neighbors surrounding the construction appealed. *Id.* This Court held that the Butters had standing to pursue a declaratory judgment because the Butters owned land near the tower, the tower would affect the enjoyment of the property, and the tower would loom over the Butters' property. *Id.* at 501, 960 P.2d at 184. The Court also held that the Butters showed particularized harm because they had spent $1,500 on a new phone system to eliminate the tower's radio signal from interfering with their telephone. *Id.* These consequences, the Court determined, made the Butters' harm particularized and fairly traceable. *Id.*

But as the County points out, the factors present in *Butters* are absent here. Plaintiffs' properties are not close enough to the proposed duplex to cause a particularized harm—Tidwell's property is located nine-tenths of a mile from Parcel C, and the Trust's property is four-tenths of a mile away from Parcel C; the duplex would be "almost completely out of sight" from Plaintiffs' properties. *See Butters*, 131 Idaho at 501, 960 P.2d at 184 (explaining that while location alone cannot confer standing, if the location exposes the plaintiff to a peculiarized harm, that is a factor in the analysis); *Evans v. Teton Cnty.*, 139 Idaho 71, 75, 73 P.3d 84, 88 (2003) ("this Court will not look to a predetermined distance in deciding whether a property owner has, or does not have, standing"). And Plaintiffs made no claim that they would incur any expense as a result of the project, as the parties in *Butters* did.

Plaintiffs counter with *In re Jerome County*, a case involving the County's approval of a livestock confinement operation. When the County challenged the appellants' standing on appeal, this Court held that all but one party had standing. *In re Jerome Cnty. Bd. of Comm'rs*, 153 Idaho 298, 308, 281 P.3d 1076, 1086 (2012). The proximity, coupled with the threatened harm, potential diminished property values, and other factors due to a livestock confinement facility were enough to confer standing on those "members of the public with their primary residence within a one (1) mile radius of a proposed site . . . ." *Id.* at 309, 281 P.3d at 1087 (quoting I.C. § 67-6529(2)). From

12

that, Plaintiffs extrapolate that their proximity to Parcel C, coupled with the potential for diminished property value, confers standing on them. The distinguishing principle from *Jerome County* that Plaintiffs overlook, however, is that a statute granted standing to those who owned their primary residence within a one-mile radius of the allegedly offending property. *See* I.C. § 67-6529(2) (limiting standing to "members of the public with their primary residence within a one (1) mile radius of a proposed site[.]" *Id.* at 309, 281 P.3d at 1087. That statutory section, part of the Local Land Use Planning chapter, is intended "to promote the health, safety and general welfare of the people" when, as applicable in *Jerome County*, the development involves animal operations. I.C. § 67-6502. Indeed, the parties in *Jerome County* put forth

> allegations that the waste water pivot overlaps onto a neighbor's land; concerns about the natural drainage; water transfers that had yet to be approved; concerns about setbacks; operation lighting that will disturb the Dimond property; compromised resale value of existing homes in the area; odors; health concerns; pollution; waste of prime farm land; lack of study on the viability of surrounding property; lack of respect for the Minidoka National Historic Site; and the fact that the operation will transform the land that should be used for smaller agricultural operations into an industrial operation.

*Id.* at 304, 281 P.3d at 1082.

Given the nature of agricultural land that has animal operations and facilities, a one-mile proximity to the proposed development raises significant health concerns because of possible contamination in the water and soil, the foul odors, and hazardous byproducts those operations produce. This is simply incomparable to an alleged visual obstruction from a development four-tenths or nine-tenths of a mile away. This limited statutory proviso has no application here, and it cannot be stretched to apply standing to *all* residents within one mile of a proposed residential development.

Both parties also reference *Jerome County* in support or opposition of the principle that one may have standing by showing evidence of compromised resale values. One of the parties in *Jerome County* applied for a livestock confinement operation that would accommodate 8,000 animals. 153 Idaho at 302, 281 P.3d at 1080. This Court held that there was sufficient evidence in the record showing the operation had the potential to compromise resale value, cause health concerns, and generate foul odors. *Id.* at 309, 281 P.3d at 1087. Here, the Plaintiffs' claim for diminished property values remains vague and indeterminable.

13

Despite Plaintiffs acknowledging they must establish that the location exposes them to a particularized harm, the only argument Plaintiffs put forth on appeal is that, as nearby landowners, they derive "peculiar benefits" from the esthetic value of the undeveloped Parcel C. Plaintiffs put forth no concrete or particularized harm that they *did* or *would* suffer as the result of their proximity to the proposed development—nor did they put forth evidence showing the development had the potential to compromise the value of their properties.

2. *Whether Plaintiffs' injuries are speculative, hypothetical, or generalized.*

The County next challenges Plaintiffs' claim that they have an esthetic and recreational interest in the land as grounds that would confer standing. Tidwell claims that her frequent use and enjoyment of the area around Parcel C is undisputed, and she maintains she would have used Parcel C for its recreational use if the parcel were left open. The district court found standing, in part, based on Tidwell's testimony that she regularly (1) drives by Parcel C, (2) uses the bike path, and (3) uses the golf course. The district court also explained:

> Plaintiffs claim they have an interest in maintaining the recreational and []esthetic values of Parcel C. They both own property within one mile of Parcel C, and both take access off Buttercup Road, driving past Parcel C. That experience will be diminished by the threatened harm.

In its later memorandum decision on the second motion for partial summary judgment, the district court also explained that Plaintiffs' interest in maintaining the esthetic value is implied by the language of the plat. The district court stated: "the obligation to keep Parcel C unobstructed is found in and enforced by the Plat, which Plaintiffs assert limits Parcel C to open space and recreational uses, which by necessity would preserve Plaintiffs['] [v]iews." The district court found that Plaintiffs' injuries were not oversimplified because, while "several of the injuries are shared by a somewhat larger group of people, none of them are shared by all Blaine County or Idaho residents."

According to Plaintiffs on appeal, their injuries are not speculative, hypothetical, or generalized because most citizens do not own real property near Parcel C, few people view Parcel C on their daily drive, and *many*, but not *all* residents frequent the bike path next to Parcel C. Plaintiffs also allege that their injuries are not generalized because "[n]o average member of the public" shares Tidwell's membership interest in the Valley Club.

Plaintiffs point to *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009), for the proposition that "recreational or even the mere esthetic interests of [a] plaintiff" support standing.

14

Plaintiffs argue that both Tidwell and guests often pass Parcel C, and Plaintiffs contend that Tidwell testified to riding her bicycle on the path that runs alongside the parcel. Because Tidwell often uses and enjoys the area immediately around Parcel C, Plaintiffs argue that they intended to use Parcel C once it was developed for its intended recreational space. The County reiterates that Plaintiffs put forth no evidence to explain how traveling past a duplex exposed them to any particularized injury, and their generalized claims cannot confer standing. We agree.

We examined a similar issue in *Boundary Backpackers v. Boundary County*, 128 Idaho 371, 374, 913 P.2d 1141, 1144 (1996), in which individuals alleged an ordinance threatened their collective esthetic and recreational interest in state lands. This Court held that all but one individual failed to show injury in fact. *Id.* at 375, P.2d at 1145. The Court determined the only party with standing was a professional guide who established he would lose business if the ordinance went into effect, which showed a harm specific to him. *Id.* The remaining parties, including eighteen individual residents of the county, however, alleged only generalized grievances that were "suffered alike by all citizens of the county." *Id.* We reach the same conclusion here as to Plaintiffs' claims.

The district court's extension of standing to Plaintiffs, if upheld, would significantly broaden this Court's jurisdictional jurisprudence to confer standing to any citizen within the general proximity of a recreational area that they frequent. While Plaintiffs correctly note that the U.S. Supreme Court has found esthetic interests are enough to support standing under a federal standard, this Court has not.

"[S]tanding requires a showing of a distinct palpable injury and fairly traceable causal connection between the claimed injury and the challenged conduct." *State v. Philip Morris, Inc.*, 158 Idaho 874, 881, 354 P.3d 187, 194 (2015) (internal quotations omitted). "This Court has defined palpable injury as an injury that is easily perceptible, manifest, or readily visible." *Id.* (citing *Martin v. Camas Cnty. ex rel. Bd. of Comm'rs*, 150 Idaho 508, 513 n. 3, 248 P.3d 1243, 1248 n. 3 (2011)). "[S]tanding can never be assumed based on a merely hypothetical injury." *Id.* at 882, 354 P.3d at 195 (citing *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002)). "[W]hen standing is challenged, mere allegations are not sufficient, and the party invoking the court's jurisdiction must demonstrate facts supporting this allegation." *Id.*

Indeed, contrary to Plaintiffs' claim, this Court has held that the occasional use of an area for recreational or esthetic enjoyment does *not* create a particularized injury sufficient to grant

15

standing. *See Selkirk-Priest Basin Ass'n, Inc. v. State ex rel. Batt*, 128 Idaho 831, 834, 919 P.2d 1032, 1035 (1996) (concluding that environmental, esthetic, and recreational interests in state lands, waters, and natural resources are generalized grievances suffered alike by all citizens). Like the berry-pickers in *Selkirk-Priest Basin*, Plaintiffs have put forth only generalized grievances, which any resident in the community could assert; therefore, we conclude such cannot alone confer standing.

 3. *Whether Tidwell's Valley Club membership confers standing.*

 Plaintiffs' next argument in support of standing is that Tidwell's Valley Club membership reflects a personal stake in the value of the Valley Club's assets, and Plaintiffs argue that if the value of the asset is diminished or harmed by the duplex, Plaintiffs' standing is secured. Plaintiffs also contend the proposed construction of the duplex could diminish the financial value of Tidwell's membership.

 The County points to Tidwell's membership agreement with the Valley Club as evidence that she acknowledged her membership value may fluctuate:

> Applicant acknowledges and represents that Applicant is not acquiring the Membership with the expectation that Applicant will derive a profit or any financial gain or return as a result of Applicant's purchase of the Membership. Applicant acknowledges that in accordance with the Bylaws the value of the membership may fluctuate at the discretion of the Board of Directors.

 The County suggests that despite Tidwell's membership agreement specifically stating she had no expectation of financial gain, the district court determined Tidwell's contractual benefit would be impaired by a duplex on Parcel C. In its memorandum decision on the second motion for partial summary judgment, the district court found that Tidwell had a right to access and use the golf course next to Parcel C that other members of the public could not use. The court also found that Parcel C was visible from the fourth hole on the course, and her membership required her to pay for improvements to the Valley Club property. The court explained, "Tidwell has both a personal and a financial interest in her membership in the Valley Club. That membership was negotiated by the parties, and Tidwell entered it in part to 'take advantage' of the Valley Club's recreational activities and amenities." The district court considered Tidwell's golf membership in concluding that

> all together, that there is – and the testimony was that the housing would change the nature of that parcel, would potentially block views, and really just the nature of the use – so I think all together, I believe there is injury in fact and find that she

16

has standing that the preliminary injunction would prevent the complained of injury if it was granted.

First, we consider this argument for standing only as it pertains to Tidwell, not the Trust, as Plaintiffs make no claim that the Valley Club membership would confer standing on the Trust. Even so, as with other claims Plaintiffs put forth to confer standing, Tidwell's membership interest in Valley Club is not sufficiently particularized to show she has suffered an injury fairly traceable to the proposed development for affordable housing. That the duplex would be visible from a hole on the golf course does not, standing alone, establish that the value of her membership interest would decrease or that the views from the course would be impaired. Nor does anything in the record suggest that being a member of the Valley Club would ipso facto confer third-party standing on behalf of Tidwell.[3]

    *4. Whether there is a causal link between the duplex and any perceived injury.*

Plaintiffs do not directly address a causal link between the duplex and an alleged injury on appeal. The County alleges that the record lacks *any* causal link showing how the proposed construction would impact Plaintiffs. As we have stated, there must be a fairly traceable causal connection between the claimed injury and the challenged conduct. *Troutner v. Kempthorne*, 142 Idaho 389, 391, 128 P.3d 926, 928 (2006). "An interest, as a concerned citizen, in seeing that the government abides by the law does not confer standing." *Id*.

As the County points out, the record contains no reference to a causal link. The district court briefly discussed redressability, explaining, "Plaintiffs complain that allowing non-open space and recreational uses will harm them. Enjoining or preventing alleged harmful uses would eliminate the potential injury for the Plaintiffs." But neither Plaintiffs nor the district court analyzed any causal connection between the Plaintiffs' property and the County's proposed development.

"Redressability and causation often overlap. The concepts are distinct insofar as causality examines the connection between the alleged misconduct and injury[.]" *Tucker v. State*, 162 Idaho

---

[3] There is some implication here that Tidwell can assert the rights of the Valley Club itself, but courts must hesitate before resolving the rights of those not parties to litigation. *Singleton v. Wulff*, 428 U.S. 106, 113 (1976). Even though a potentially illegal action may affect the litigant (Tidwell) and a third party (the Valley Club), the litigant may not rest her claims on the rights or legal interests of the third party. *Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990). To the extent that the Valley Club may assert a specific injury to itself, it is the proper party to bring such a claim—not Tidwell.

17

11, 24, 394 P.3d 54, 67 (2017) (internal quotations and citations omitted). While this Court could hold the alleged diminution in the value of Tidwell's club membership and alleged loss of esthetic value have a fairly traceable causal connection to constructing the proposed affordable housing, these injuries are not substantiated, and Tidwell did not make the necessary arguments to support these claims on appeal. *See Kelly v. Kelly*, 171 Idaho 27, 47, 518 P.3d 326, 346 (2022) (holding that an argument is waived if the appellant fails "to cite legal or *factual* support for [the] arguments.") (emphasis added); *Litke v. Munkhoff*, 163 Idaho 627, 637, 417 P.3d 224, 234 (2018) (quoting *Carney v. Heinson*, 133 Idaho 275, 283, 985 P.2d 1137, 1145 (1999) ("This Court does not consider issues cited on appeal that are not supported by propositions of law, authority or argument.").

Because there is not a fairly traceable causal connection between Plaintiffs' claimed injury and the proposed duplex, there is no causal link to support standing. In short, Plaintiffs lack standing to bring their complaint, and we hold that the district court erred in holding that Plaintiffs had standing to pursue claims against the County, BCHA, and ARCH seeking a declaratory judgment and injunctive relief.

**B.     The district court did not err when it dismissed Tidwell's procedural due process violation claim.**

Plaintiffs' cross-appeal against the County alleging that the district court erred in dismissing Tidwell's procedural due process claim under 42 U.S.C. section 1983 on a Rule 12(b)(6) motion after concluding Tidwell had no constitutionally protected interest to support her claim. Tidwell argued below that the County's denial of her appeal of the building permit used for Parcel C deprived Tidwell of her right to procedural and substantive due process under the Fourteenth Amendment to the United States Constitution.

Plaintiffs now argue the district court's decision was error because Tidwell's claim surpassed the minimal bar set by section 1983 to survive dismissal. To dismiss under that standard, the district court had to determine she "[could] prove no set of facts" that could establish the County's actions deprived her of a constitutional right. *Gardner v. Hollifield*, 96 Idaho 609, 610–11, 533 P.2d 730, 731–32 (1975).

"When considering a 12(b)(6) motion, [this Court] look[s] only to the pleadings to determine whether a claim for relief has been stated." *Colafranceschi v. Briley*, 159 Idaho 31, 34, 355 P.3d 1261, 1264 (2015). "[T]he complaint must be viewed in the light most favorable to the

plaintiff, it must be given the benefit of every reasonable intendment, and every doubt must be resolved in its favor." *Gardner*, 96 Idaho at 610–11, 533 P.2d at 731–32. In other words, "[a] motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle the plaintiff to relief." *Bedke v. Ellsworth*, 168 Idaho 83, 90, 480 P.3d 121, 128 (2021) (quoting *Taylor v. Maile*, 142 Idaho 253, 257, 127 P.3d 156, 160 (2005)) (internal punctuation omitted).

The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State . . . shall deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).

To prove Tidwell's section 1983 claim, "[t]here are two threshold requirements. . . . First, a person must act under color of state law when committing the challenged act. Second, the claimant must establish that the conduct deprived the claimant of a constitutionally protected right, privilege, or immunity." *Dana, Larson, Roubal & Assocs. v. Bd. of Comm'rs of Canyon Cnty.*, 124 Idaho 794, 798, 864 P.2d 632, 636 (Ct. App. 1993); *see also Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Tidwell contends she alleged deprivation of a property interest. "While the question of what constitutes state action is often a difficult question, prior to answering that question the plaintiff must first establish that [s]he has been 'deprived' of a constitutionally protected right in order to establish a cause of action under 42 U.S.C. § 1983." *DeMoss v. City of Coeur d'Alene*, 118 Idaho 176, 179, 795 P.2d 875, 878 (1990). Plaintiffs' briefing addresses these questions in reverse order. Because the analysis requires Tidwell to make a threshold showing that she was deprived of a constitutionally protected right, we will first consider whether Tidwell alleged a violation of her constitutional rights.

1. *Tidwell failed to allege a property interest sufficient to establish a constitutional violation.*

Tidwell argues she *was* deprived of a property interest to establish she was deprived of a constitutionally protected right. Plaintiffs' complaint alleged a property right based on the ownership of the real property within the Valley Club and Tidwell's close proximity to Parcel C. While Plaintiffs concede Tidwell has no "legitimate claim of entitlement" to any building permit, Plaintiffs contend Tidwell had a property interest in the outcome of the decision to grant the

19

building permit to ARCH. Tidwell also claims that recording or designating a plat for public use provides the public with a "determinable fee" in those areas. The County responds that Tidwell has failed to allege she has some property interest at stake in the outcome of the building permit or appeal that could establish a plausible section 1983 claim. The County maintains that Tidwell's interest, at best, is that she opposes development of affordable housing on Parcel C even though she supported affordable housing generally, in locations in Blaine County not close to her property.

Below, Plaintiffs argued in opposition to the County's motion to dismiss that "in deciding the standing issue in the preliminary injunction hearing, this [c]ourt has already held that Plaintiffs have a property interest sufficient for standing." The district court, in granting the County's motion to dismiss, explained this argument was unpersuasive. The court stated, "[s]tanding does not equate to endowing a party with a constitutionally protected property interest," but requires a separate analysis. Ultimately, the district court found:

> The Blaine County Code provides no prescribed formal process that limits the County's discretion regarding building permits or appeals regarding decisions made by the Administrator. *See* BCC §§ 9-3-5(B) and (D), 9-32-3-(C). The Blaine County Land Use Administrator and the Board have broad discretion on the matter of issuing building permits. The Plaintiff, despite unsubstantiated arguments of animus and bias on the part of the Board, has not shown that [she has] a legitimate claim of entitlement to the denial of building permit #2017-157.

Both the district court and the County cited and relied on cases from the Ninth and Second Circuits to support the district court's decision. First, in *Shanks v. Dressel*, 540 F.3d 1082 (9th Cir. 2008), the City of Spokane granted the Dressels a building permit to construct a duplex addition within a historic district. *Id.* at 1084–85. A neighborhood group sued Spokane, asserting a section 1983 claim, arguing the construction compromised the historic character of the area and harmed recreational, esthetic, and economic interests. *Id.* at 1085–86. The Ninth Circuit rejected the neighborhood group's argument, explaining the group "does not have a legitimate claim of entitlement to the denial of the [developer's] permit." *Id.* at 1091.

Then, in *Gagliardi v. Village of Pawling*, 18 F.3d 188 (2d Cir. 1994), the Gagliardis filed a section 1983 claim against Pawling alleging the City violated their substantive and procedural due process rights in processing a development request for a neighborhood plastics factory. *Id.* at 189–90. The Gagliardis argued they had a property interest in the proper enforcement of local ordinances. *Id.* at 191. The Second Circuit affirmed the dismissal of the section 1983 claim, holding the Gagliardis had not established a deprivation of a protected right. *Id.* at 192–93.

20

From these cases, the County argues Tidwell lacks a protected property interest in the demanded denial of a building permit to ARCH, the "proper" application of the Blaine County Code, or in enforcing the district court's judgment. We agree.

Plaintiffs' argument on appeal hinges on the claim that Tidwell held a determinable fee interest in Parcel C as a member of the public. Plaintiffs claim that because the Final Plat designates Parcels B and C for "public use," Tidwell has a vested real property interest in those parcels. This argument fails to persuade us. Plaintiffs rely on both *Mochel v. Cleveland*, 51 Idaho 468, 5 P.2d 549 (1930), and *Neider v. Shaw*, 138 Idaho 503, 65 P.3d 525 (2003), to support this claim. However, both cases are readily distinguishable since neither addresses the transfer of property via warranty deed, which is how the parcels were transferred in this case.

To grant fee simple determinable, as Tidwell contends, the language of the deed must include limiting language. *See* 28 AM. JUR. 2d ESTATES § 33. A fee simple determinable "is an interest in real property subject to the limitation that the property reverts to the grantor upon the occurrence of a specified event; a defeasible fee gives the complete set of rights of ownership to the grantee until the defeating event arises." 31 C.J.S. ESTATES § 16. The language of the deed contained no words of limitation, such as "so long as," "while," "until," or "during," which is a defining feature of a determinable fee. *See id*. The deed here contains no such limitations. There was also nothing in the deed or Final Plat indicating that the property would revert to the grantor upon the occurrence of a specified event. Consequently, because Tidwell has no property interest in Parcel C, we do not consider whether she has pleaded an action under color of state law.

C. **This Court need not resolve the other issues raised by the County on appeal or Plaintiffs on cross-appeal.**

We do not address the County's remaining issues on appeal because we conclude Plaintiffs lacked standing to bring their claims. We likewise do not consider Plaintiffs' claim on cross-appeal about attorney fees below because, without standing, Plaintiffs could not be the prevailing parties and were not entitled to an award of attorney fees.

D. **The County is awarded costs, but not attorney fees on appeal.**

Both parties request attorney fees and costs under Idaho Code sections 12-117 and 12-121, and under Idaho Appellate Rules 40(a) and 41. Idaho Code Section 12-117 authorizes the Court to award attorney fees in proceedings between persons and state agencies or political subdivisions, when a non-prevailing party acts without a reasonable legal or factual basis. I.C. § 12-117.

21

Although the County, ARCH, and BCHA are the prevailing parties on appeal, we decline to award attorney fees under Idaho Code sections 12-117 or 12-121. Plaintiffs' arguments were well-reasoned and articulated in support of the district court's judgment and their claims on appeal, and we thus do not conclude the appeal was defended frivolously, unreasonably, or without foundation. Accordingly, we decline to award attorney fees. Costs are awarded to the County, ARCH, and BCHA as the prevailing parties on appeal.

## IV. CONCLUSION

We vacate the district court's judgment because Plaintiffs lacked standing to assert their claims, and we remand the case to the district court for entry of a dismissal. Costs, but not attorney fees, are awarded on appeal to the Appellants.

JUSTICES MOELLER and HORTON, pro tem, CONCUR.

STEGNER, J., dissenting.

The majority concludes that Tidwell does not have standing to bring her claims against Blaine County. It does so because she is unable to satisfy the requirements for standing for federal cases set out in the United States Constitution. This Court first embraced the federal test for standing when it adopted the Court of Appeals' reasoning in *Glengary-Gamlin Protective Association v. Bird*, 106 Idaho 84, 675 P.2d 344 (Ct. App. 1983). *Bear Lake Educ. Ass'n ex rel. Belnap v. Bd. of Trs. of Bear Lake Sch. Dist. No. 33*, 116 Idaho 443, 448, 776 P.2d 452, 457 (1989). I respectfully dissent from the majority's continued use of a federal standard which is much more restrictive than that established by Idaho's constitution. I would therefore overrule the line of precedent applying the *Glengary-Gamlin* analysis and conclude that Tidwell has standing to pursue her case, while at the same time reaching the merits of her claims.

In my view, *Glengary-Gamlin* improperly constrained standing requirements in Idaho because the Idaho Constitution does not limit standing in the same way the "case or controversy" language of Article III of the United States Constitution does. I would instead follow the guidance from our own state's constitution, which encompasses a broader class of persons who are able to have their cases heard. *See* Michael S. Gilmore, *Standing Law in Idaho: A Constitutional Wrong Turn*, 31 Idaho L. Rev. 509 (1995).

States are free to determine their own requirements for standing and are not required to blindly follow the federal scheme. *See, e.g.*, *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989) ("We have recognized often that the constraints of Article III [of the federal constitution] do not

apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other rules of justiciability[.]"). Nevertheless, as this Court has previously held, and the majority concludes today, "the origin of Idaho's standing is a self-imposed constraint adopted from federal practice, as there is no 'case or controversy' clause or an analogous provision in the Idaho Constitution as there is in the United States Constitution." *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 513, 387 P.3d 761, 766 (2015) (citing U.S. CONST. art. III, § 2, cl. 1; *State v. Philip Morris, Inc.*, 158 Idaho 874, 881, 354 P.3d 187, 194 (2015)). As a result, this Court has previously followed the federal test for determining whether a case or controversy exists. *Id.* However, as noted, Idaho has no comparable "case or controversy" language from which federal standing jurisprudence arises. I think we do a disservice to the Idaho Constitution by interpreting it in a narrow way that is unnecessarily consistent with the federal constitution rather than the more expansive language employed in the Idaho Constitution. That we acknowledge we are subordinating Idaho's constitution to the federal constitution makes matters worse. How can we uphold our oath to the Idaho Constitution when we unnecessarily defer to the United States Constitution even in instances where we are not obliged to do so?

Determining whether individuals like Tidwell have standing in court to act as a check on governmental conduct is more challenging under current precedent than is required under the Idaho Constitution. The Idaho Constitution neither requires, nor endorses, this burdensome effort and the exclusivity it brings. Instead, it envisions a lower bar to access Idaho's courts. The district courts have "original jurisdiction in all cases, both at law and in equity[.]" IDAHO CONST. art. V, § 20. This broad authority grants Idahoans more access to their court system for a variety of purposes, including in this case, "to challenge government adherence to . . . substantive and procedural validity of local ordinances." Gilmore, *supra*. In other words, under Idaho's constitution, a potential governmental violation should be sufficient for an Idahoan to bring suit against that branch of the government.

In this case, the County has an obligation to adhere to the use limitations found in the Plat. Under the Idaho Constitution's expansive view of standing, a violation of those limitations is sufficient for individuals like Tidwell to bring suit. An individual aggrieved by a government acting beyond its own strictures should have an opportunity to challenge potentially injurious conduct, and the Idaho Constitution grants this state's judiciary the authority to hear and resolve those claims. Tidwell challenged that conduct when she filed her complaint in district court, and I

23

believe that she should be entitled to challenge an alleged governmental violation in court. This conclusion comports with longstanding Idaho jurisprudence, where this Court held that a citizen-taxpayer had standing to challenge the State Board of Equalization's tax assessment, even though his injury would be similar to that of other citizen-taxpayers. *Orr v. State Bd. of Equalization*, 3 Idaho 190, 194, 28 P. 416, 417–18 (1891). In my view, Tidwell should be allowed to pursue her claims in district court.

There exists an expectation that the government will act in accordance with its laws. Requiring individuals to meet the more stringent federal standing requirements makes it more difficult (if not impossible) for Idahoans to hold that government to account. As Gilmore explains:

> [The federal] judiciary had no general authority, but only that bestowed upon it by Congress or by Article III itself. But the Idaho Constitution was more particularly aimed at protecting the individual citizen, particularly where access to the court was concerned. Article I, section 18 provides:
>
>> Justice to be freely and speedily administered. – Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay, or prejudice.

Gilmore, *supra*.

The fundamental difference between federal court and Idaho state court needs to be understood and respected in a way that our current jurisprudence does not. Federal courts are inherently courts of limited (some would say extremely limited) jurisdiction. *See, e.g.*, *Gunn v. Minton*, 568 U.S. 251, 256 (2013). Conversely, Idaho's district courts are courts of general jurisdiction. *McCormick v. Smith*, 23 Idaho 487, 489, 130 P. 999, 1001 (1913). A court of general jurisdiction has much broader jurisdiction than a court of limited jurisdiction. What this means is that when the Idaho Supreme Court decides to follow federal jurisprudence when it comes to jurisdiction (broadly speaking, standing), we limit a citizen's ability to seek and obtain redress in Idaho's courts. A narrow view of standing limits, in very real ways, the rule of law. The effect of imposing the federal standing requirement in Idaho results in a wrong being committed without a remedy. Our founders, when they drafted Idaho's constitution, understood the important difference between courts of limited jurisdiction and those of general jurisdiction. However, by knowingly interpreting Idaho's constitution similarly to its federal counterpart, we in effect deprive citizens of access to Idaho's courts.

Whether a government is following the law is a question that should be developed by the parties and resolved by the courts. We should not make it more difficult for citizens to act as a check on government when that government acts beyond its authority. I believe this interpretation is in line with the original intent of standing in Idaho. Therefore, I would hold that *Glengary-Gamlin Protective Association* and its progeny, including this case, have unnecessarily restrained Idahoans in their attempts to have their claims resolved by Idaho courts. Accordingly, I would conclude Tidwell has standing and reach the merits of her claims. For the reasons stated, I respectfully dissent.

JUSTICE TROUT, pro tem, CONCURS.